# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 07-1244

TOP TOBACCO, L.P., and REPUBLIC TOBACCO, L.P.,

*Plaintiffs-Appellants*,

*v.*

NORTH ATLANTIC OPERATING COMPANY, INC., and
NATIONAL TOBACCO COMPANY, L.P.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 06 C 950—**Matthew F. Kennelly**, *Judge*.

ARGUED NOVEMBER 8, 2007—DECIDED DECEMBER 4, 2007

Before EASTERBROOK, *Chief Judge*, and FLAUM and
KANNE, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. This case illustrates the
power of pictures. One glance is enough to decide the
appeal.

Top Tobacco, L.P., sells tobacco to people who want to
roll cigarettes by hand or make them using a cranked
machine. This is known as the roll-your-own, make-your-
own or RYO/MYO business. Top Tobacco and its predeces-
sors have been in this segment of the cigarette market

for more than 100 years, and the mark TOP®, printed above a drawing of a spinning top, is well known among merchants and customers of cigarette tobacco. North Atlantic Operating Company and its predecessors also have been in the roll-your-own, make-your-own business for more than 100 years, though initially only as manufacturers of cigarette paper. Not until 1999 did North Atlantic bring its own tobacco to market. The redesigned can that it introduced in 2001 bears the phrase Fresh-Top™ Canister. Top Tobacco maintains in this suit under the Lanham Act that none of its rivals may use the word "top" as a trademark.

Trademarks are designed to inform potential buyers who makes the goods on sale. See *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004); *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). Knowledge of origin may convey information about a product's attributes and quality, and consistent attribution of origin is vital when vendors' reputations matter. Without a way to know who makes what, reputations cannot be created and evaluated, and the process of competition will be less effective. See generally William M. Landes & Richard A. Posner, *The Economic Structure of Intellectual Property Law* 166–209 (2003).

Top Tobacco insists that it has exclusive rights to the word "top" for use on tobacco in this market. But many words have multiple meanings: "Top" may mean the best, or a spinning toy, or a can's lid. Top Tobacco uses the word "top" in the second sense and may hope that consumers will hear the first as well; North Atlantic uses the word in its third sense, to refer to a pull-tab design that keeps tobacco fresh. If English used different words to encode these different meanings, there could not be a trademark problem. Because our language gives the word "top" so many different meanings, however, there is a

potential for confusion. But no one who saw these cans side by side could be confused about who makes which:

  

  

The phrase "Fresh-Top Canister" on North American's can does not stand out; no consumer could miss the difference between Top Tobacco's TOP brand, with a spinning top, and North Atlantic's ZIG-ZAG® brand, with a picture of a Zouave soldier. The trade dress (including colors and typography) of each producer's can is distinctive. Here is a larger version of the ZIG-ZAG brand can.

  

The left panel shows the can as it was between 2001 and 2004, when Fresh-Top Canister was on the front (right under "Classic American Blend"), and the two right panels show the can as it was from 2004 through 2006, when the phrase Fresh-Top Canister was on the side. The phrase was removed in 2006 when North Atlantic replaced the aluminum pull-tab design with a plastic lid. (This change does not make the case moot, because the possibility of damages remains.)

The district court granted summary judgment for the defendants, 2007 U.S. Dist. LEXIS 2838 (N.D. Ill. Jan. 4, 2007), and the pictures show why. It is next to impossible to believe that any consumer, however careless, would confuse these products. "Next to impossible" doesn't mean "absolutely impossible"; judges are not perceptual psychologists or marketing experts and may misunderstand how trade dress affects purchasing decisions. But the pictures are all we have. Top Tobacco did not conduct a survey of consumers' reactions to the cans and did not produce an affidavit from even a single consumer or merchant demonstrating confusion.

What Top Tobacco wants us to do is to ignore the pictures and the lack of any reason to believe that any-

one ever has been befuddled. Like other courts, this circuit has articulated a multi-factor approach to assessing the probability of confusion. See, e.g., *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041 (7th Cir. 2000). These factors include whether the trademarks use the same word, whether they sound alike, and so on. Top Tobacco insists that "Fresh Top" is spelled and sounds the same as fresh "TOP", and thus it traipses through the list. It conveniently omits the fact that the phrase on the ZIG-ZAG can is "Fresh-Top Canister", with "Fresh-Top" serving as a phrasal adjective modifying the word "canister" rather than as the product's brand. But it's unnecessary to belabor the point. A list of factors designed as *proxies* for the likelihood of confusion can't supersede the statutory inquiry. If we know for sure that consumers are not confused about a product's origin, there is no need to consult even a single proxy.

Top Tobacco says that merchants may have been confused, because a few of the price lists that North Atlantic sent to its wholesalers and retailers omitted the ZIG-ZAG brand and gave prices for a "6 oz. Fresh-Top™ Can" and a ".75 oz. Pocket Pouch™". Yet all of these lists prominently include the seller's name (North Atlantic or National Tobacco), and if any commercial buyer thought that North Atlantic was selling the TOP brand the record does not contain a shred of evidence to that effect.

Finally, only a few words are required to address Top Tobacco's claim that it has a "famous" brand that was diluted by the "Fresh-Top Canister" phrase. See 15 U.S.C. §1125(c)(2)(a) (special protection for famous marks "widely recognized by the general public of the United States as a designator of source of the goods or services of the mark's owner"). There can be no doubt that TOP is an old and recognized brand in the loose-cigarette-tobacco market. There is also no doubt that "top" is commonly used

in the tobacco business, so that the appearance of that word on a package does not affect the reputation of Top Tobacco. One brand of chewing tobacco bears a large "Top Leaf" stamp. "Top Hat" is a well-known brand of cigar tobacco. Marlboro sells cigarettes in a "Flip-Top® Box". Another brand of cigarettes is sold under the mark "Top Score". The "Tip-Top" brand of cigarette paper is available from the same sources as Top Tobacco's tobacco. When Top Tobacco obtained a federal registration for its brand of loose cigarette tobacco, it assured the Patent and Trademark Office that it was claiming only limited rights in the word "top." It could hardly be otherwise: the word "top" is too common, and too widely used to refer to the lids of packages—as well as parts of clothing ensembles, masts of ships, summits of mountains, bundles of wool used in spinning, half-innings of baseball, positions in appellate litigation (the top-side brief), and flavors of quark—to be appropriated by a single firm.

The portion of §1125 from which we have quoted was amended in October 2006 to use "the general public" as the benchmark. This change eliminated any possibility of "niche fame," which some courts had recognized before the amendment. See *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633 (7th Cir. 1999). Top Tobacco insists that even if the amendment (and North Atlantic's new packaging) preclude equitable relief, it is still entitled to damages under the old version of §1125. But what we have said is enough to show that the word "top" is not famously distinctive "as a designator of source" in any sensibly specified niche of tobacco products.

AFFIRMED

No. 07-1244 7

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*