In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-2502

ARTURO ESCOBAR BARRAZA,

*Petitioner*,

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,

*Respondent*.

———————

Petition for Review of an Order of the
Board of Immigration Appeals.

———————

ARGUED FEBRUARY 27, 2008—DECIDED MARCH 13, 2008

———————

Before EASTERBROOK, *Chief Judge*, and POSNER and WOOD,
*Circuit Judges*.

EASTERBROOK, *Chief Judge*. Arturo Escobar Barraza, a
citizen of Mexico, applied for permission to remain in
the United States as a permanent resident under a provi-
sion establishing a preference for immediate relatives of
citizens. (Both his wife and his mother are citizens of the
United States.) Before the agency made a final decision on
this application, however, Escobar was convicted in
Nebraska of possessing drug paraphernalia—specifically,
a pipe for smoking marijuana. Neb. Rev. Stat. §28-441. An

immigration judge concluded that this conviction makes Escobar inadmissible, see 8 U.S.C. §1182(a)(2)(A)(i)(II), and an alien who is inadmissible at the time he seeks adjustment of status not only is ineligible for permanent residence, see 8 U.S.C. §1227(a)(1)(A), but also is not entitled to remain in the United States. The IJ ordered him removed to Mexico, and the Board of Immigration Appeals agreed.

Escobar's lead argument is that §1182(a)(2)(A)(i)(II) is inapplicable because no federal law forbids simple possession of drug paraphernalia—though 21 U.S.C. §863 bans the import, export, or sale of drug paraphernalia. Section 1182(a)(2)(A)(i)(II) applies to "a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21)". As Escobar understands this language, the phrase "as defined in section 802 of title 21" modifies the entire text of the subsection rather than the immediate antecedent ("controlled substance"). He contends, in other words, that §1182(a)(2)(A)(i)(II) operates similarly to 8 U.S.C. §1101(a)(43)(B), which *Lopez v. Gonzales*, 127 S. Ct. 625 (2006), read to create a rule that drug offenses under state law may be treated as aggravated felonies for immigration purposes only if the deeds also are felonies under federal law. See also *United States v. Pacheco-Diaz*, 506 F.3d 545 (7th Cir. 2007), rehearing denied, No. 05-2264 (7th Cir. Jan. 29, 2008).

Section 1101(a)(43)(B) defines an "aggravated felony" to include "illicit trafficking in a controlled substance . . . including a drug trafficking crime (as defined in section 924(c) of title 18)"; the Court read the parenthetical phrase to refer to the immediate antecedent and thus to

cover only events that are crimes under federal law. In §1182(a)(2)(A)(i)(II), by contrast, the immediate antecedent is "controlled substance", and the interpretive stance taken by *Lopez* thus does not assist Escobar, for marijuana is a controlled substance under Schedule I, 21 U.S.C. §812(c)(I)(c)(10), to which 21 U.S.C. §802(6) points.

No court of appeals has applied the hypothetical-federal-felony approach to §1182(a)(2)(A)(i)(II). Escobar's reading is not grammatically sound. "[V]iolation of . . . any law or regulation of a State . . . (as defined in section 802 of title 21)" would be incoherent. Section 802 does not "define" states or state laws; it defines many terms used in Title 21, including the Schedules on which controlled substances are listed, but does not say which acts concerning what substances are lawful and which forbidden. The only plausible understanding of §1182(a)(2)(A)(i)(II) is that "as defined in section 802 of title 21" modifies "controlled substance" and nothing else.

Although §1182(a)(2)(A)(i)(II) makes Escobar inadmissible, the Attorney General may permit some inadmissible aliens to enter or remain in the United States. Section 212, 8 U.S.C. §1182(h), is among the grants of discretionary authority. This subsection reads:

> The Attorney General may, in his discretion, waive the application of subparagraphs (A)(i)(I), (B), (D), and (E) of subsection (a)(2) of this section and subparagraph (A)(i)(II) of such subsection insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana if— . . .
>
>> (1)(B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted

for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien; . . . [and] . . .

(2) the Attorney General, in his discretion, and pursuant to such terms, conditions and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status.

No waiver shall be provided under this subsection in the case of an alien who has been convicted of (or who has admitted committing acts that constitute) murder or criminal acts involving torture, or an attempt or conspiracy to commit murder or a criminal act involving torture. No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States. No court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection.

Because Escobar is inadmissible under §1182(a)(2)(A)(i)(II), a waiver is possible only if his con-

viction "relates to a single offense of simple possession of 30 grams or less of marijuana". The IJ and BIA concluded that this means that the conviction itself must be *for* simple possession of marijuana; a drug-paraphernalia crime differs from "simple possession . . . of marijuana" and makes waiver impossible. The Board wrapped up: "Despite the fact that [this] reading might result in harsher results for someone convicted of what might be considered a lesser crime, possession of paraphernalia, than for someone convicted of possession of 30 grams or less of marijuana, the law is quite clear on its face and we apply the law as written."

Two preliminary subjects before we take up Escobar's challenge to this decision.

First, the concluding sentence of the hanging paragraph—"No court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection."—does not foreclose judicial review, because 8 U.S.C. §1252(a)(2)(D) adds a proviso: "constitutional claims or questions of law" remain reviewable. Escobar wins if §1182(h) means one thing and loses if it means something different; that's the sort of legal question to which §1252(a)(2)(D) refers. See *Cevilla v. Gonzales*, 446 F.3d 658 (7th Cir. 2006); *Jiménez Viracacha v. Mukasey*, No. 07-1548 (7th Cir. Mar. 3, 2008).

Second, we do not give any special weight to the agency's construction of §1182(h). That's not because we think the statute unambiguous; the phrase "relates to" creates interpretive problems. But the Board (acting by a single member) asserted that the statute is clear, and by forswearing any exercise of administrative discretion the Board also disabled its counsel from invoking the principle of *Chevron U.S.A. Inc. v. Natural Resources*

*Defense Council, Inc.*, 467 U.S. 837 (1984). If the Board should return to the subject in the future, our opinion today—which as far as we can tell is the first judicial encounter with this subsection—will not be the last word on the statute's administration. See *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005).

Possessing a pipe for smoking marijuana is a crime within the scope of §1182(a)(2)(A)(i)(II) because drug paraphernalia relates to the drug with which it is used, and that statute speaks of a crime "relating to a controlled substance (as defined in section 802 of title 21)". If possession of drug paraphernalia relates to the controlled substance for the purpose of §1182(a), why not for the purpose of §1182(h)? The Board's observation that a conviction for possessing paraphernalia differs from a conviction for possessing marijuana is true, but §1182(h) is not limited to a conviction for possessing less than 30 grams of marijuana. The phrase is: "such subsection insofar as it *relates to* a single offense of simple possession of 30 grams or less of marijuana" (emphasis added). The Board's understanding deprives the italicized phrase of any function, treating "relates to" as if it were "is". Neither the Board's opinion nor the brief and argument by the Department of Justice has suggested what "relates to" means, or how that phrase can bring a paraphernalia conviction within §1182(a)(2)(A)(i)(II) but not §1182(h).

Consider someone who is arrested while smoking marijuana from a pot pipe at a concert. In most states, that's three crimes: possessing marijuana, possessing drug paraphernalia, and using drugs in a public place. If the state obtains a conviction for possessing marijuana, then §1182(h) applies if the alien had 30 grams or less. (A 6-

ounce (170 gram) can of loose tobacco, see *Top Tobacco, L.P. v. North Atlantic Operating Co.*, 509 F.3d 380 (7th Cir. 2007), is sold as enough for 200 cigarettes; this implies that 30 grams of marijuana is considerably more than one person could smoke at a concert.) Likewise, we should suppose, if the prosecutor charges the alien with smoking pot in public, that conviction "relates to" the marijuana being smoked. Section 1182(h) speaks of a conviction that relates to an "offense" of possessing marijuana; an "offense" may or may not lead to a "conviction" for that possession. That's how a *conviction* for smoking pot in public relates to the *offense* of possessing marijuana. And it is hard to see why things should be different if the prosecutor charges the alien with possessing paraphernalia to smoke the weed. Not even Thomas Reed Powell—who famously defined the legal mind as one that can think of something that is inextricably connected to something else without thinking about what it is connected to—could miss the fact that a pot pipe is related to the pot that it is used to smoke.

What distinguishes our hypothetical from Escobar's situation is that, when he was caught, he had the pipe but not the pot. (At least the charging documents don't say that he had any in his possession when he was arrested.) Still, the pipe must be "related to" possession of marijuana; that relation is why possessing the pipe was illegal. Owning a pipe for smoking tobacco does not violate any law; it is the relation of a given pipe to its use with a forbidden drug that makes it "drug paraphernalia."

So there is no logical problem in treating a pot pipe as related to marijuana, whether or not the pipe and the marijuana are found together in a pouch. There remains the question whether the paraphernalia conviction relates to

"simple possession of 30 grams or less of marijuana". If Escobar had been caught with the pipe and five grams, the answer would be yes. As it happens, he was caught with the pipe and zero grams. Yet zero is less than five. The ancient Romans and Greeks did not think zero a number, but today we understand that zero is smaller than 30. Actually it is most unlikely that Escobar's quantity of marijuana was "zero"; the reason the pipe he was carrying could be classed as drug paraphernalia was the presence of a minute quantity of marijuana (or cannabis residue) in the bowl or stem. A "minute quantity" is less than 30 grams.

We appreciate the potential reply that Escobar's stash may well have exceeded 30 grams, but that the police failed to locate it. That could be equally true in our concert hypothetical, however. Someone who takes 5 grams of marijuana to a concert may have 100 grams at home. The music lover arrested and convicted for possessing 5 grams at the concert is eligible for a waiver under §1182(h), no matter how much else eluded detection. The statute asks about the amount underlying the conviction, not about the amount the alien actually owned. It is part of a charge-offense system that uses official records, rather than a real-offense system that asks what crimes the alien committed but has not been convicted of.

Pipes, roach clips, and other paraphernalia designed for use with personal-possession quantities of marijuana come within §1182(h) because the paraphernalia relates to the drug, and the implied quantity is under 30 grams. Scales, bagging gear, trays and lamps for growing whole plants, and other apparatus for use with larger quantities or distribution do not relate to "simple possession" and so fall outside the waiver. Drawing the line

will be difficult in some cases but is easy in Escobar's. His conviction for possessing one pot pipe "relates to a single offense of simple possession of 30 grams or less of marijuana". He is therefore eligible for consideration under §1182(h).

Eligibility differs from entitlement. Whether Escobar satisfies the standard in §1182(h)(1)(B), and, if so, whether he is entitled to a favorable exercise of discretion under §1182(h)(2), are for the agency to decide. The petition for review is granted, the Board's decision is vacated, and the matter is remanded for proceedings consistent with this opinion.