In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 07-2487

HOWARD H. ALVAREZ GUARDIA and
ISABEL C. MONTESINOS BALLESTEROS,

*Petitioners,*

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,

*Respondent.*

---

Petitions for Review of an Order of
the Board of Immigration Appeals.
Nos. A97 597 128 & No. A97 597 129

---

ARGUED APRIL 2, 2008—DECIDED MAY 2, 2008

---

Before EASTERBROOK, *Chief Judge*, and BAUER and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge*. Howard Hildemar Alvarez Guardia and his wife Isabel Cleotilde Montesinos Ballesteros petition for review of a final order of the Board of Immigration Appeals, which affirmed a final order of removal.

The petitioners are reasonably well-to-do citizens of Venezuela, who lived in Caracas. After previous separate visits to the United States—Ballesteros spent a

week here (we don't know where) in October of 2001, and Alvarez, a month later, spent a week vacationing in Miami—both returned to their home in Caracas. They came here again, this time together, on February 16, 2002, on a 6-month visa that allowed them to stay until August 15, 2002. Although August 15, 2002, came and went, the petitioners didn't do the latter: they overstayed their visa and, 14 months later, on October 22, 2003, filed an application for asylum. This was followed, 2 months later, by their receipt of a Notice to Appear filed by the Department of Homeland Security (the successor to the old Immigration and Naturalization Service) which required their presence before an immigration judge to show cause why they should not be ordered removed from the country. The "political situation" in Venezuela, say the petitioners, motivated their desire not to return there, so a brief look back at that "situation," which for our purposes began in the early 1990s, is in order.

After staging an unsuccessful coup d'etat in 1992 and spending two years in prison as a result, Hugo Chavez was elected President of Venezuela in 1998. In 2001, Chavez formed a group called the Bolivarian Circles; by 2002, its membership was estimated to be 700,000. Members of the organization allegedly verbally and physically attack opponents of the President. They also break up anti-Chavez marches. The petitioners said they joined three such opposition marches during 2001 and 2002. In addition, the petitioners were supporters of Accion Democratica, the principal party in opposition to President Chavez in the Venezuelan Assembly. The petitioners themselves are not "card carrying" members of the party, though Mr. Alvarez's grandparents are.

The petitioners tell of a time, on February 2, 2002, when they were attacked by members of the Bolivarian Circles, who tried to flip over the taxi in which they were riding. Mr. Alvarez got out of the taxi to ask the attackers to let them pass. Instead, he was beaten so badly that he could not work for two weeks. He filed a police report and was referred for medical treatment. Soon after the attack the petitioners left Venezuela and came to the United States. They arrived, as we said, on February 16, 2002.

The application for asylum, filed on October 22, 2003, was untimely. Under 8 U.S.C. § 1158(a)(2)(B), an alien must establish "by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." Petitioners attempted to fit within possible exceptions to the one-year deadline, but they have now acknowledged that our decision in *Jimenez Viracacha v. Mukasey*, 519 F.3d 388 (7th Cir. 2008), precludes the claim, and they are no longer pursuing it.

Petitioners also sought withholding of removal, a claim respondent argues is waived on appeal. The primary focus of petitioners' main brief, which was filed before our decision in *Viracacha*, was on the asylum application. The respondent argues that, by their failure to argue that they are also entitled to withholding of removal, petitioners waived any appeal of the denial of that claim. *See Huang v. Gonzales*, 403 F.3d 945 (7th Cir. 2005). It is a close question. But because the petitioners' main brief makes occasional, though very perfunctory mention of withholding of removal, we will consider the claim.

When the Board of Immigration Appeals adopts the immigration judge's decision while supplementing it with its own reasons, we review the decision of the IJ as

supplemented. *Gjerazi v. Gonzales*, 435 F.3d 800 (7th Cir. 2006). We review factual determinations under a "highly deferential version of the substantial evidence test . . . ." *Karapetian v. INS*, 162 F.3d 933, 936 (7th Cir. 1998).

A withholding of removal claim is more difficult to sustain than a claim for asylum. To qualify for withholding of removal under 8 U.S.C. § 1231(b)(3), petitioners must establish that a "clear probability" exists that their lives or freedom would be threatened in Venezuela because of their race, religion, nationality, membership in a particular social group, or political opinions. *Tesfu v. Ashcroft*, 322 F.3d 477, 481 (7th Cir. 2003). They must prove that it is more likely than not that they will be subjected to persecution upon removal. *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987).

There are two ways to establish the claim for withholding of removal. If an applicant can show that he suffered past persecution in the country of removal, "it shall be presumed that the applicant's life or freedom would be threatened in the future in the country of removal . . . ." 8 C.F.R. § 1208.16(b)(1); *Firmansjah v. Gonzales*, 424 F.3d 598, 605 (7th Cir. 2005). Failing that, an applicant may offer evidence of a clear probability of future persecution. *BinRashed v. Gonzales*, 502 F.3d 666 (7th Cir. 2007). The IJ and the Board ruled that the petitioners failed to establish either.

There is an absence of substantial evidence in the record to support a finding that the petitioners suffered past persecution in Venezuela because of membership in a particular group or because of their political opinions. Mr. Alvarez says he was a member of Accion Democratica, but he admits that he was not an active member and

attended meetings only when his grandparents took him when he was a child. He participated in two opposition marches, but so did thousands of other people. He admitted that he was not harmed during the marches. The only evidence of his ever being harmed is the taxi cab incident. He argues that only the higher classes take taxis in Venezuela, and therefore he was attacked because he was a member of a group with high social standing. The IJ rejected the contention and found that there was no evidence that the attack was anything other than a random act of violence. In fact, Mr. Alvarez admitted that he made a mistake in getting out of the taxi when it was near an ongoing demonstration being held by the Bolivarian Circles. The mob which attacked him did not seem to know who he was. Mr. Alvarez testified that he was attacked simply because people in the mob have aggressive natures and "resolve everything with fights." Furthermore, the police assisted him at the scene and referred him for medical treatment. The evidence supports the IJ's finding that the incident falls short of showing past persecution.

The claim of past persecution is further undermined because of petitioners' previous return to Venezuela after other visits to the United States. There is nothing in the record which would compel us to come to a conclusion contrary to that reached by the IJ and the Board.

The Board also found that the petitioners failed to establish that it was more likely than not that they would face future persecution if they were required to return to Venezuela. That Mr. Alvarez voted against President Chavez does not show that he will suffer future persecution; as the IJ noted, so did three million other people. Nor does the simple fact that the petitioners have

been living in the United States establish that it is more likely than not that they will be persecuted if they return to Venezuela. The record is devoid of evidence regarding the likelihood of persecution.

The petitioners contend that the likelihood that they will be persecuted is heightened by the fact that their families began to receive telephone threats in 2005. But petitioners are unable to identify the source or purpose of the threats. A petitioner must be able to identify the individual or group responsible for a particular threat and the purpose of the threat. Further, the claim must rise above the level of harassment to be evidence of persecution. *See Mitev v. INS*, 67 F.3d 1325 (7th Cir. 1995).

Furthermore, petitioners' parents, who are the ones who received the threats, continue to live in Venezuela, going about their normal activities with their social democratic friends. Evidence that an applicant's family members remain unharmed in their home country may support a finding that the applicant is unlikely to suffer future persecution. *Ambati v. Reno*, 233 F.3d 1054 (7th Cir. 2000). In fact, some of the threats have been reported to the police along with requests for help. One of the families has changed their telephone number, which caused the threats to stop. The evidence falls short: "Threats can constitute past persecution only in the most extreme circumstances, such as where they are of a most immediate or menacing nature or if the perpetrators attempt to follow through on the threat." *Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006).

In short, there is insufficient evidence in the record to show a clear probability that petitioners would suffer persecution if they returned to Venezuela.

Accordingly, the petition for review is DISMISSED IN PART and DENIED IN PART.