**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 10, 2008
Decided July 2, 2008

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

No. 07-3014

| | |
|---|---|
| MODESTO A. GOMEZ PEREZ, *Petitioner*, | Petition for Review from an Order of the Board of Immigration Appeals. |
| *v.* | No. A79 262 389 |
| MICHAEL B. MUKASEY, Attorney General of the United States, *Respondent*. | |

**O R D E R**

Modesto Gomez, a Guatemalan, is fighting the government's efforts to remove him back to that country. As relevant here, Gomez requested withholding of removal, which the immigration judge denied. In his petition before this court, Gomez disputes the immigration judge's conclusion that he failed to establish a clear probability of future persecution on account of a statutorily enumerated ground. According to Gomez, the IJ should have found that he suffered past persecution on account of an imputed political opinion, and thus presumptively faces future persecution if removed to Guatemala. But Gomez has not shown that the evidence compels a finding of past persecution or that he will be persecuted if he is returned to Guatemala, and we deny the petition for review.

The underlying facts are not in dispute.  In 1995, during Guatemala's civil war, 17-year-old Gomez was visiting his godfather, Fernando Reyes Yoc, when a guerilla burst into the house, shouting that he would kill Yoc because he served as a Guatemalan military commissioner.  The guerilla then shot and killed both Yoc and his nephew.  Gomez, who was in the other room when this happened, escaped out a window into the forest.  The guerilla shot at, but did not hit, Gomez as he fled.  Gomez returned to his mother's house on foot and did not report the incident to police or the military.  A week later guerillas approached Gomez's grandparents asking questions about him and where he was.  Gomez then fled to Mexico, where he stayed (except for a one-day return) until 1998.

In 1998, two years after the Guatemalan Peace Accords were signed, Gomez returned home.  About two weeks after his arrival, he received two anonymous notes threatening him if he did not leave Guatemala.  He did not report these threats to the authorities.  Shortly thereafter Gomez again left Guatemala, this time entering the United States in December 1998 without inspection.  He continued to receive reports of people looking for him in Guatemala, most recently in 2000.

Although he entered the United States in 1998, Gomez did not apply for asylum until 2001.  The Department of Homeland Security served him with a Notice to Appear in 2003, and in September 2004 he filed a new application for asylum and withholding of removal.  After a final removal hearing in 2005, the IJ ruled that the asylum application was untimely and denied the application for withholding on the merits.  The IJ credited Gomez's testimony but concluded that his ordeal had not constituted persecution and, regardless, was not motivated by any ground enumerated in 8 U.S.C. § 1231(b)(3)(A).  The IJ also concluded that Gomez had not otherwise established a clear probability of future persecution on account of an enumerated ground.

Gomez appealed to the Board of Immigration Appeals, arguing that his testimony established that he suffered harm constituting persecution, and that the reason he was targeted is because the guerillas imputed his godfather's political opinions to him.  Gomez also argued that he established a clear probability of future persecution even if he did not suffer past persecution.  The BIA affirmed the IJ and issued its own opinion, holding that Gomez had not shown either past persecution or a clear probability of future persecution.  The one-judge decision does not address explicitly whether the harm suffered by Gomez was on account of a statutory ground.

Gomez asks this court to review only the denial of withholding.  Gomez has not argued before us that he presented enough evidence to establish a clear probability of future persecution independent of the statutory presumption that arises from a finding of past

persecution. Instead, Gomez's sole contention is that there isn't substantial evidence to support the immigration courts' finding that he didn't suffer past persecution on account of an enumerated ground. Gomez insists that he suffered significant abuse rising to the level of persecution and that the motivation for that abuse was imputed political opinion.

A single member of the BIA issued a written opinion affirming the IJ's decision pursuant to 8 C.F.R. § 1003.1(e)(5). The BIA agreed with the IJ's decision, but did not adopt or supplement it, so we review the BIA's decision. *See Moab v. Gonzales*, 500 F.3d 656, 659 (7th Cir. 2007). We review the decision that Gomez was not eligible for withholding under a substantial-evidence standard. *See Tariq v. Keisler*, 505 F.3d 650, 656 (7th Cir. 2007). We will deny the petition for review as long as the decision is supported by "reasonable, substantial and probative evidence." *Huang v. Mukasey*, No. 07-2074, 2008 WL 1976595, at *3 (7th Cir. May 8, 2008). It is not enough that we might have ruled the other way; the evidence must compel that conclusion or we will not overturn the agency. *See Pavlyk v. Gonzales*, 469 F.3d 1082, 1087 (7th Cir. 2006).

To qualify for withholding of removal, Gomez needed to establish a clear probability, i.e., that it's more likely than not, that his life or freedom would be threatened in Guatemala because of his "race, religion, nationality, membership in a particular social group, or political opinion." *See* 8 U.S.C. § 1231(b)(3)(A); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987); *Guardia v. Mukasey*, No. 07-2487, 2008 WL 1913605, at *2 (7th Cir. May 2, 2008). If Gomez had suffered past persecution, he would have benefitted from a rebuttable presumption that his life or freedom would be threatened if he returns to Guatemala. *See* 8 U.S.C. § 1231(b)(3*); Guardia*, 2008 WL 1913605, at *2; *Irasoc v. Mukasey*, 522 F.3d 727, 729-30 (7th Cir. 2008).

Gomez argues that the shooting incident, combined with the threats he later received, amounted to persecution from the guerillas. Persecution is generally something governments do, not private individuals. *See Hor v. Gonzales*, 400 F.3d 482, 485 (7th Cir. 2005). Only when a government is powerless to protect its citizens from private actors or actually condones or acquiesces in their abuse can misconduct by private actors constitute persecution. *See Chatta v. Mukasey*, 523 F.3d 748, 753 (7th Cir. 2008); *Garcia v. Gonzales*, 500 F.3d 615, 618 (7th Cir. 2007); *Tariq*, 505 F.3d at 656. Gomez, though, did not show government impotence or complicity. In fact, at his hearing he testified that he never sought the protection of the Guatemalan government at all. No matter how severe the harm he suffered, therefore, it cannot be termed persecution.

But even if the record compelled a finding of government action, this court's cases do not compel a conclusion that the acts Gomez complains about rose to the level of persecution. The bar for whether the evidence compels a finding of persecution is a high

one.  And rather than apply a checklist approach, this court looks to the details of the particular situation to determine whether acts rise to the level of persecution.  *Liu v. Ashcroft*, 380 F.3d 307, 313 (7th Cir. 2004).  Only in the most extreme circumstances do threats constitute past persecution.  *Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006).  Gomez was shot at during the civil war, and later, after he returned to Guatemala when the war ended, he received anonymous threats.  But he was not harmed physically, and there are no details in the record about the threats suggesting that they were more serious than most.  While Gomez correctly notes that physical harm "is not the sine qua non of persecution," *see Tarraf v. Gonzales*, 495 F.3d 525, 534-535 (7th Cir. 2007), the incidents in the record do not compel the conclusion that he suffered past persecution.  We have held that scenarios more extreme than Gomez's did not compel a finding of past persecution.  *See, e.g., id.* (holding that petitioner's testimony that he was detained by Hezbollah guerillas and shot twice, if believed, did not compel a finding of past persecution); *Mema v. Gonzales*, 474 F.3d 412, 417-418 (7th Cir. 2007) (holding that evidence of abduction at gunpoint, detention, and beating did not compel finding of past persecution); *Bejko*, 468 F.3d at 485-86 (7th Cir. 2006) (holding that evidence of two weeks of detention without abuse, and three days of detention plus beatings, did not compel finding of past persecution).

Even if we agreed with Gomez that a finding of persecution was compelled, we still have no basis for concluding that the IJ wrongly decided that the alleged persecution was motivated by one of the grounds enumerated in 8 U.S.C. § 1231(b)(3)(A).  To succeed on this claim, Gomez was required to show that the guerillas imputed a political opinion to him and targeted him on that basis.  *See Mema v. Gonzales*, 474 F.3d at 416-17.  He argues, though, that the guerilla killed his godfather and his godfather's nephew because his godfather was in the army.  Membership in the army does not itself demonstrate a political opinion; there are many reasons one might join the army that have nothing to do with politics, e.g., conscription, a paycheck, prestige, or protection.  *See INS v. Elias-Zacarias*, 502 U.S. 478, 481-82 (1992); *Flores-Calderon v. Gonzales*, 472 F.3d 1040, 1042-43 (8th Cir. 2007) (holding that in spite of "military service opposing the guerilas and subversives," Peruvian army officer had not shown threats connected to protected grounds); *Molina-Estrada v. INS*, 293 F.3d 1089, 1095 (9th Cir. 2002) (holding that petitioner could not establish imputed political opinion based on mere fact of father's military service).  There is no evidence in the record suggesting that Yoc held a political opinion of any sort; it appears he died because he was a combatant in the civil war in Guatemala, and "civil wars do not require immigration officials to grant asylum to either side's combatants or supporters."  *Hor*, 400 F.3d at 486.  If there is no evidence Yoc held a political opinion, no opinion could be imputed to Gomez.

Accordingly, we DENY the petition for review.