NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 3, 2012
Decided October 23, 2012

**Before**

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 11-3668

| | |
|---|---|
| ROLANDO F. MATEO-ALEJANDRO, *Petitioner*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | No. A029 273 276 |
| ERIC H. HOLDER, JR., Attorney General of the United States, *Respondent*. | |

**O R D E R**

Rolando Mateo-Alejandro, a native of Guatemala, petitions for review of an order of the Board of Immigration Appeals upholding the immigration judge's denial of his applications for asylum and withholding of removal. He argues that death threats made by government soldiers at least 25 years ago during Guatemala's civil war compel the conclusion that he presently is eligible for asylum or withholding of removal. Because substantial evidence supports the immigration judge's conclusions that Mateo-Alejandro

had not been persecuted and does not have a well-founded fear of future persecution, we deny the petition for review.

Mateo-Alejandro fled Guatemala during its civil war. He arrived in the United States in 1989 and applied for asylum a little over a year later (there was not a one-year deadline for asylum applications at that time, Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 604, 110 Stat. 3009; 8 C.F.R. § 208.4(a)(2)(B)(ii)). The case was not referred to an immigration judge until 2006, when the government began removal proceedings.

At his removal hearing in September 2009, Mateo-Alejandro testified that he began his obligatory service in one of the many civil patrols—groups of civilians supporting the Guatemalan government against leftist guerillas—when he was nine years old. Although he never injured anyone and was not hurt himself, as he grew older he was expected to help with increasingly dangerous missions, and he decided to leave when he was a teenager because he was afraid of being killed during one of those missions. He left Guatemala in the mid-1980s because government soldiers threatened to kill him if he abandoned the patrol. He did not name or describe anyone who threatened him but testified at his asylum hearing in 2009 that the soldiers may kill him if he returns to Guatemala. He also submitted the State Department's country report for 2008 and a 2009 report by Amnesty International; both documents detail general violence in Guatemala, but neither says anything about violence directed against citizens who deserted civil patrols during the war.

The immigration judge found Mateo-Alejandro credible but concluded that he had not shown himself eligible for asylum. The judge explained that Mateo-Alejandro lacked evidence of past persecution because government forces had never caused him injury and his testimony about the soldiers' threats was too general. Nor did Mateo-Alejandro show a well-founded fear of future persecution, the judge concluded, because the civil war had ended in 1996 and he lacked evidence that he was still at risk. The judge also mentioned that Mateo-Alejandro had not shown that he had been or would be mistreated on account of a protected ground. The judge said that for the same reasons Mateo-Alejandro had also failed to meet the higher standard for withholding of removal. The Board of Immigration Appeals agreed with the immigration judge's conclusions and reasoning.

In this court, Mateo-Alejandro argues generally that the immigration judge's decision is not supported by substantial evidence. He contends that the soldiers' threat to kill him was serious enough to constitute persecution. He also argues that he presented sufficient evidence to show that there is a reasonable probability he will be persecuted upon returning to Guatemala. He asserts that he will be interrogated—and, by axiom, tortured—when he returns.

To be eligible for asylum, Mateo-Alejandro had to show that he was persecuted in the past or has a well-founded fear of future persecution on the basis of a protected ground, such as political opinion. *See* 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 1208.13; *Lin v. Holder*, 630 F.3d 536, 541–42 (7th Cir. 2010). Failure to establish eligibility for asylum necessarily means an alien has failed to establish eligibility for withholding of removal. *Bueso-Avila v. Holder*, 663 F.3d 934, 937 (7th Cir. 2011); *Ahmed v. Ashcroft*, 348 F.3d 611, 615 (7th Cir. 2003). We review the immigration judge's decision, as supplemented by the Board's reasoning, for substantial evidence and will reverse the immigration judge's decision only if the evidence compels a contrary result. *Abraham v. Holder*, 647 F.3d 626, 632 (7th Cir. 2011).

The immigration judge's conclusion that Mateo-Alejandro had failed to show that he was or would be mistreated *on account of a political opinion*, a protected ground, is supported by substantial evidence. Mateo-Alejandro has waived any challenge to this conclusion by failing to develop an argument. *See Raghunathan v. Holder*, 604 F.3d 371, 378 (7th Cir. 2010); *Wang v. Gonzales*, 445 F.3d 993, 999 (7th Cir. 2006). But he would not have succeeded even if he had developed this argument. Mateo-Alejandro needed to show that he was or will be persecuted *because of* a political opinion. *INS v. Elias-Zacarias*, 502 U.S. 478, 482–83 (1992); *Borovsky v. Holder*, 612 F.3d 917, 923 (7th Cir. 2010); *Orejuela v. Gonzales*, 423 F.3d 666, 674 (7th Cir. 2005). Yet he never showed (or even asserted) that he held a political opinion or that he was threatened because of that opinion. Instead, he testified that he left the civil patrol because he did not want to be killed, and provided no evidence that the soldiers that threatened him believed he had a political opinion.

Substantial evidence also supports the immigration judge's conclusion that Mateo-Alejandro had not been persecuted by being threatened. Threats amount to past persecution "only in the most extreme circumstances," i.e., when threats are immediate, credible, or someone has tried to follow through on them. *Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006); *accord Guardia v. Mukasey*, 526 F.3d 968, 972 (7th Cir. 2008). Mateo-Alejandro's testimony was too vague to show that the specific circumstances in which he was threatened were extreme. He did not identify the soldiers who threatened him or say whether they had followed through on similar threats against other people, he never clarified whether the soldiers leveled a threat specifically against him or against all potential deserters, he offered no evidence of efforts to follow through on the threat, and he never said whether he was able to remain in his village safely for a period of time or if he immediately fled. Without concrete details, the evidence could not compel the immigration judge to find that Mateo-Alejandro had been persecuted. *See Borovsky*, 612 F.3d at 922 (concluding that unspecified threats did not compel finding of past persecution); *Ahmed*, 348 F.3d at 615–16, 618–19 (concluding that vague threats, without details, did not compel finding of past persecution); *Dandan v. Ashcroft*, 339 F.3d 567, 573–74 (7th Cir. 2003)

(concluding that detention, which alien had not described in detail, did not compel finding of past persecution).

In some instances Mateo-Alejandro appears to argue that he was also threatened by guerillas because he held an anti-government political opinion.  However, this argument fails for several reasons. First, he did not make this contention to the immigration judge. Second, the argument is illogical, because guerillas also held anti-government political opinions. Third, as mentioned above, Mateo-Alejandro did not show that he was mistreated on account of a political opinion. And, fourth, for actions by private parties to amount to persecution, the government must have been complicit or unable to protect the victim, and Mateo-Alejandro makes no such suggestion. *Jonaitiene v. Holder*, 660 F.3d 267, 270 (7th Cir. 2011); *Garcia v. Gonzales*, 500 F.3d 615, 618 (7th Cir. 2007).

Substantial evidence also supports the immigration judge's conclusion that Mateo-Alejandro failed to demonstrate a well-founded fear of future persecution. That the threat was made at least 25 years ago and the civil war ended in 1996, and with it mandatory service in the civil patrols, is evidence that his fear is not well-founded. *See Ni v. Holder*, 635 F.3d 1014, 1020 (7th Cir. 2011) (noting that harassment that occurred far in the past does not warrant much weight); *Alimi v. Ashcroft*, 391 F.3d 888, 890 (7th Cir. 2004) (concluding that harassment that occurred before Macedonia's transition to democracy does not compel finding of well-founded fear of future prosecution); *Dandan*, 339 F.3d at 575 (concluding that end of Lebanese civil war supported Board's decision that alien did not have well-founded fear of future prosecution); *Pascual v. Mukasey*, 514 F.3d 483, 488 (6th Cir. 2007) (stating that there was no support for notion that anti-government opinion would be imputed to alien when Guatemalan civil war had ended decade before and civil patrols had disbanded). The reports that Mateo-Alejandro submitted do not suggest otherwise: They detail widespread violence, but neither report mentions violence directed at those who abandoned civil patrols, and the State Department report notes that no instances of political killings by government agents had been documented in 2008. Additionally, the reports recount several prosecutions brought by the government against former members of civil patrols who committed human rights violations during the civil war. Older reports, of which this court may take judicial notice, *see Ayele v. Holder*, 564 F.3d 862, 873 (7th Cir. 2009); *Nwaokolo v. INS*, 314 F.3d 303, 308 (7th Cir. 2002), state that former members of civil patrols threatened and may have killed several individuals speaking out against them. U.S. DEPARTMENT OF STATE, BUREAU OF DEMOCRACY, HUMAN RIGHTS, AND LABOR, GUATEMALA: 2005 (2006), *available at* http://www.state.gov/j/drl/rls/hrrpt/2005/61729.htm; U.S. DEPARTMENT OF STATE, BUREAU OF DEMOCRACY, HUMAN RIGHTS, AND LABOR, GUATEMALA: 2003 (2004), *available at* http://www.state.gov/j/drl/rls/hrrpt/2003/27900.htm. But these reports do not mention any violence directed against deserters, and more-recent reports do not mention this violence, suggesting it has subsided. And the last documented

political killing by government agents happened in 2003. U.S. DEPARTMENT OF STATE, BUREAU OF DEMOCRACY, HUMAN RIGHTS, AND LABOR, GUATEMALA: 2003. Moreover, Mateo-Alejandro claims that the people who threatened him still live in the village where he is from, though he cannot establish a well-founded fear of persecution if he can live safely in another part of Guatemala. *See* 8 C.F.R. 1208.13(b)(2)(ii); *Oryakhil v. Mukasey*, 528 F.3d 993, 998 (7th Cir. 2008); *Wang v. Keisler*, 505 F.3d 615, 622 (7th Cir. 2007).

Accordingly, Mateo-Alejandro's petition for review is DENIED.