**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1227
_____

RAMIRO ENRIQUE ROJAS,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review of a Decision
and Order of the Board of Immigration Appeals
BIA No. A056 123 018
Immigration Judge: Hon. Walter Durling
_____

Argued before Merits Panel on October 1, 2012
Reargued En Banc May 29, 3013

Before: McKEE, *Chief Judge*, SCIRICA, RENDELL,
AMBRO, FUENTES, SMITH, FISHER, CHAGARES,
JORDAN, HARDIMAN, GREENAWAY, Jr., VANASKIE,
SHWARTZ and GREENBERG, *Circuit Judges*.

1

(Opinion Filed: August 23, 2013)

Craig R. Shagin **[ARGUED]**
The Shagin Law Group
The Inns of St. Jude
120 South Street
Harrisburg, PA 17701

Tracey M. Hubbard
TMG Law Offices
321 Spruce Street, Suite 509
Bank Towers Building
Scranton, PA 18503

   *Attorneys for Petitioner*

Eric H. Holder, Jr., Attorney General
Stuart F. Delery, Acting Assistant Attorney General, Civil
Division
Cindy S. Ferrier, Assistant Director
Thomas W. Hussey
Andrew J. Oliveira
Carol Federighi **[ARGUED]**
Timothy G. Hayes
Office of Immigration Litigation, Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

   *Attorneys for Respondent*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*, with whom McKEE, *Chief Judge*, and SCIRICA, RENDELL, AMBRO, SMITH, CHAGARES, JORDAN, HARDIMAN, GREENAWAY, Jr., VANASKIE, and SHWARTZ, *Circuit Judges* join:

Petitioner Ramiro Rojas entered the United States as a lawful permanent resident in 2003 when he was 12 years old. Six years later, Rojas pled guilty to possessing drug paraphernalia in violation of Pennsylvania law and was ordered to pay a fine and court costs. The Department of Homeland Security (the "Department") then initiated removal proceedings against Rojas, contending that he was removable for having violated a law "relating to a controlled substance (as defined in section 802 of Title 21)." 8 U.S.C. § 1227(a)(2)(B)(i). Rojas sought to terminate the proceedings on the theory that the offense that constitutes the basis of removal must involve a substance defined in section 802 of Title 21, *i.e.*, a federally controlled substance, but that the Department had failed to meet such a burden in this particular case. The immigration agencies disagreed that § 1227(a)(2)(B)(i) imposes that requirement and ordered Rojas removed.

After consideration of Rojas's petition for review by a three-judge panel of our Court, we *sua sponte* ordered that the case be heard *en banc*. *See* Third Cir. I.O.P. 9.4 (2010). We now grant Rojas's petition for review and conclude that, in a removal proceeding under § 1227(a)(2)(B)(i), the Department

3

must show that the conviction for which it seeks to remove a foreign national involved or was related to a federally controlled substance. The record here was silent as to the drug involved. Accordingly, we conclude that the Department failed to meet its burden and remand the case for the agency to determine whether the Department may have another opportunity to demonstrate that Rojas's conviction involved a federally controlled substance.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

### A.

Rojas is a 22-year old citizen of the Dominican Republic who entered the United States in 2003 as a lawful permanent resident and has resided in the country ever since. In December 2009, Rojas pled guilty to possessing drug paraphernalia and was assessed a fine and court costs by the Court of Common Pleas of Lackawanna County, Pennsylvania.[1]

Contending that this conviction rendered Rojas removable under Section 237 of the Immigration and Naturalization Act ("INA"), the Department instituted removal proceedings against him in York, Pennsylvania. This statute provides:

> Any alien who at any time after admission has
> been convicted of a violation of (or a conspiracy
> or attempt to violate) any law or regulation of a

---

[1] The charges were brought pursuant to 35 Pa. Stat. Ann. § 780-113(a)(32).

4

State, the United States, or a foreign country relating to a controlled substance (**as defined in section 802 of Title 21**), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(i) (emphasis added).[2]

**B.**

In the proceeding before the Immigration Judge ("IJ"), the Department submitted Rojas's guilty plea and colloquy and a police criminal complaint pertaining to the drug paraphernalia case. The guilty plea and colloquy state only that Rojas pled to "Drug Para [sic] 1 yr, 2,500 fine," App. 185a (guilty plea); 186a (plea colloquy), but do not indicate what paraphernalia or what substance was involved in the crime of conviction. The police criminal complaint, on the other hand, states that the paraphernalia consisted of "loose cigar paper and [a] plastic baggie" with marijuana. App. 190a. However, due to serious issues regarding the reliability of this document, *see infra* Part IV.C, and because the Department argued that the fact of conviction alone rendered Rojas removable, neither the immigration agencies nor the

---

[2] Initially, the Department also charged Rojas as removable on the basis of a March 31, 2009 guilty plea to one count of possession of a small amount of marijuana (less than 30 grams) in violation of 35 Pa. Stat. Ann. § 780-113(a)(31). Subsequently, however, the Department conceded that this conviction did not render Rojas removable because it fell within the less-than-30-grams escape clause of § 1227(a)(2)(B)(i). Accordingly, only the drug-paraphernalia conviction is at issue.

parties ultimately relied on the police criminal complaint. The record of uncontested materials before the agencies was thus silent as to the substance involved in Rojas's paraphernalia conviction.

Rojas moved to terminate the proceedings, arguing that "[t]he plain language of [§ 1227(a)(2)(B)(i)(a)] requires [the Department] to prove that the substance underlying an alien's state-law conviction for a possessory offense is one that is defined in Section 102 of the Controlled Substance[s] Act [("CSA")]." App. 129a-30a. In this regard, Rojas noted that Pennsylvania's controlled-substances schedules list drugs that are not in the federal schedules and contended that the official record of his conviction is silent with respect to the substance involved.[3] The parties agree that, at the time of

---

[3]      The Commonwealth includes many objects in its definition of drug paraphernalia, including typically innocuous items such as blenders, bowls, and balloons, *see* 35 Pa. Stat. Ann. § 780-102(b), but a defendant cannot be found guilty of violating the paraphernalia law unless he used or intended to use an object in connection with a substance criminalized by Pennsylvania law, *id*. § 780-113(a)(32); *see also Commonwealth v. Torres*, 617 A.2d 812, 815 (Pa. Super. Ct. 1992) (explaining that to obtain a conviction for possession of drug paraphernalia "the Commonwealth must establish that the items possessed[] were used or intended to be used with a controlled substance"). Pennsylvania law further defines a "controlled substance" as "a drug, substance, or immediate precursor included in Schedules I through V of [the Pennsylvania Controlled Substance, Drug, Device, and Cosmetic Act]." 35 Pa. Stat. Ann. § 780-102(b). Federal law, by contrast, defines "controlled substance" in the CSA as

6

Rojas's conviction, Pennsylvania's controlled-substances schedules contained three narcotics that were not then in the federal schedules—"dextrorphan," "1-(3-trifluoromethylphenyl)piperazine," and "propylhexedrine." *See* Resp't's Resp. to Letter Br. at 1-3, Oct. 12, 2012.

## C.

The IJ denied Rojas's motion to terminate the proceedings and ordered him removed to the Dominican Republic, concluding that "a state's drug statute need not align perfectly with the CSA" in order for a drug-paraphernalia conviction to serve as the basis for removal. App. 53a. Although the IJ reasoned that "[t]his only makes sense" because "[i]t's highly doubtful Congress would intend for an alien to escape the immigration consequences for being convicted under a State or foreign controlled substance law simply because the drug was not listed in the CSA," *id.*, he did not address the import of his ruling on the words "as defined in section 802 of Title 21."

On appeal to the Board of Immigration Appeals ("BIA"), Rojas reiterated the argument that "[t]he plain language of Section 237(a)(2)(B)(i) of the INA requires that in order for a conviction to make an alien removable on the basis of a controlled substance offense, [the Department] must prove by clear and convincing evidence that the substance underlying an alien's state law conviction is one

a "drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter," but "does not include distilled spirits, wine, malt beverages, or tobacco." 21 U.S.C. § 802(6).

7

covered by" the CSA. App. 7a. The BIA, however, also disagreed. The BIA did not squarely confront the issue of whether a noncitizen could be removed for a conviction involving a substance that is not federally controlled. Instead, it focused on the statute's use of the words "relating to" and concluded that drug-paraphernalia statutes "relate to" controlled substances despite the lack of equivalence between the drug schedules of a particular State and the federal schedules. Accordingly, the BIA affirmed the order of removal.

Rojas then filed a motion for stay of removal in this Court, which we granted, and this petition for review of the BIA's decision.

## II. JURISDICTION AND STANDARD OF REVIEW

The IJ had jurisdiction over Rojas's removal proceedings under 8 U.S.C. § 1229a. The BIA had jurisdiction to review the IJ's order of removal and its underlying denial of Rojas's motion to terminate under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15.

We generally have jurisdiction under 8 U.S.C. § 1252 to review final orders of removal. However, 8 U.S.C. § 1252(a)(2)(C) provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable" for having been convicted of violating a law "relating to a controlled substance" under 8 U.S.C. § 1227(a)(2)(B)(i). Although the BIA's order falls within this jurisdiction-stripping provision, we retain jurisdiction to ascertain our jurisdiction, *i.e.*, to determine "(1) whether the petitioner is an alien and (2) whether he has been convicted of

one of the enumerated offenses." *Borrome v. Att'y Gen.*, 687 F.3d 150, 154 (3d Cir. 2012); *see also* 8 U.S.C. § 1252(a)(2)(D) ("Nothing in subparagraph (B) or (C), or in any other provision of this chapter . . . which limits or eliminates judicial review, shall be construed as precluding review of . . . questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.").

We need not decide the standard of review applicable to the BIA's unpublished decision in this case. *See De Leon-Ochoa v. Att'y Gen.*, 622 F.3d 341, 348-51 & n.5 (3d Cir. 2010). We reach the same conclusion regardless of whether we review the BIA's decision *de novo*, *see, e.g.*, *Denis v. Att'y Gen.*, 633 F.3d 201, 208-09 (3d Cir. 2011) (suggesting *de novo* review is proper in a case, such as this, involving a pure legal issue as to removability), or whether we review it under the deferential *Chevron* standard, *see id.* (recognizing that deference to an agency's reasonable interpretation of ambiguous statutory language would be appropriate).

## III.  THE PARTIES' ARGUMENTS

### A.    Rojas's Contentions

In his petition for review, Rojas reiterates the simple argument he has advanced throughout these proceedings: that the INA "quite unambiguously requires" that, "in order to prove deportability under [section 1227(a)(2)(B)(i), the Department] must show that Mr. Rojas's criminal conviction was for possession of a substance that is . . . contained in the federal schedules of the [CSA]." Pet'r's Br. at 12, 14. He further argues that his particular conviction does not meet this

9

requirement given that Pennsylvania criminalizes substances that are not illegal under federal law and that the Department did not identify the substance underlying his state-law conviction as a federally controlled substance.

## B.    The Department's View

The Department instead frames the question as "whether a (generic) conviction under [Pennsylvania's paraphernalia law] . . . constitutes 'a violation of . . . any law . . . of a State . . . relating to a controlled substance (as defined in section 802 of Title 21).'" Resp't's Br. at 13. The Department contends that the answer to this question lies in the application of the "formal categorical approach," under which the issue "becomes whether a generic conviction for drug paraphernalia . . . is a close enough 'fit' to federal controlled substances." *Id.* at 17-18. The Department further posits that generic paraphernalia offenses do "fit," regardless of the controlled substance involved.

But, even if we assume that the Department is correct that drug-paraphernalia statutes "relate to" controlled substances, a point which Rojas concedes, *see, e.g.*, Oral Arg. at 9:30-9:35 (May 29, 2013), that does not address the straightforward question of statutory interpretation we must tackle on the effect of the parenthetical "(as defined in section 802 of Title 21)" on the Department's burden of proof. Does it require the Department to show that the noncitizen's conviction involved a substance that is "defined in section 802 of Title 21"?[4] The Department argues that there is no need to show what substance was involved or whether it was

---

[4]    We refer to this language as the "'as defined' parenthetical," or sometimes simply as "the parenthetical."

10

listed in the federal schedules so long as there is a "close" fit between those schedules and Pennsylvania's. Resp't's Br. at 19. In other words, the Department contends that a noncitizen may be removed for a drug offense involving a substance that only a state criminalizes, so long as that state's schedules approximate the CSA schedules.

## IV. <u>ANALYSIS</u>

### A. The Language of § 1227(a)(2)(B)(i)

#### 1. Textual Canons of Statutory Interpretation

In cases of statutory interpretation, "we begin by looking at the terms of the provisions [at issue] and the 'commonsense conception' of those terms." *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577, 2585 (2010) (citing *Lopez v. Gonzales*, 549 U.S. 47, 53 (2006)). As the Supreme Court has repeatedly emphasized, in "all" cases "[t]he inquiry ceases if the statutory language is unambiguous." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (internal quotation mark omitted). Thus, to determine whether § 237(a)(2)(B)(i) of the INA requires that a federally controlled substance underlie a state-law drug conviction, we turn first to the text of the law itself, which, as noted earlier, provides that:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance **(as defined in section 802 of Title 21)**, other than a single

> offense involving possession for one's own use
> of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(i) (emphasis added).

Reading the statute as written, it is clear that the parenthetical "(as defined in section 802 of Title 21)" is a restrictive modifier that affects only its immediate antecedent term, "a controlled substance." As the Seventh Circuit has explained, the parenthetical "can only be read to modify 'controlled substance,' its immediate antecedent," and thus "bridges the state law crimes with federal definitions of what counts as a controlled substance." *Desai v. Mukasey*, 520 F.3d 762, 766 (7th Cir. 2008); *see also Disabled in Action v. SEPTA*, 539 F.3d 199, 201 n.13 (3d Cir. 2008) (explaining that under the "'rule of the last antecedent' . . . [,] 'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it *immediately* follows'" (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003))).[5]

Thus, the most straightforward reading of § 1227(a)(2)(B)(i) is that to establish removability the Department must show that "a controlled substance" included in the definition of substances in section 802 of Title 21 was involved in the crime of conviction at issue. Parsing the different clauses with the aid of the "last antecedent" canon reveals that, as a whole, § 1227(a)(2)(B)(i) requires the

---

[5] *Desai* interpreted 8 U.S.C. § 1182(a)(2)(A)(i)(II), whose language is identical to § 1227(a)(2)(B)(i) in all material respects. We analyze interchangeably provisions of the INA containing identical language. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005).

12

Department to establish that the individual it seeks to remove (1) is an alien (2) who at any time after entering the country violated or attempted to violate a law relating to a controlled substance and (3) that the controlled substance is defined as such by federal law. Points (1) and (2) are not at issue in this case.

A simple example further illustrates why this reading of the statute is correct. Section 802(6) of Title 21 states that "[t]he term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter. The term does not include distilled spirits, wine, malt beverages, or tobacco . . . ." Putting the two provisions together, the INA effectively renders removable noncitizens convicted under laws "relating to a controlled substance ('a drug or other substance . . . included in schedule I, II, III, IV, or V . . . [,] not includ[ing] spirits, wine, malt beverages, or tobacco')." Suppose, then, that Pennsylvania—which has its own controlled-substances schedules to which it is free to add substances not in the federal lists—chose to include tobacco in its schedules, and that Rojas was convicted of possessing tobacco paraphernalia. Given the express exclusion of tobacco from the federal list of controlled substances, it would be a complete anomaly to then place Rojas in removal proceedings for possessing tobacco paraphernalia. Indeed, such a result would violate the cardinal principle that we do not cripple statutes by rendering words therein superfluous, as the Department's reading would have us do to the "as defined" parenthetical. *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute." (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (internal quotation marks omitted));

*Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("We strive to avoid a result that would render statutory language superfluous, meaningless, or irrelevant.").

### 2. Relevant Case Law

We find further support for this construction in the decision of the Ninth Circuit—the first Court of Appeals to have squarely addressed the meaning of the "as defined" parenthetical—which concluded as we do that the language means that the Department must establish that a state-law drug conviction involved a federally controlled substance. *Ruiz-Vidal v. Gonzales*, 473 F.3d 1072 (9th Cir. 2007) *abrogation on other grounds recognized by Cardozo-Arias v. Holder*, 495 F. App'x 790, 792 n.1 (9th Cir. 2012). In that case, the Ninth Circuit reasoned that to hold otherwise would "read out of the statute the explicit reference to Section [8]02 of [Title 21]." *Id.* at 1077 n.5. It therefore reversed the BIA's order of removability because the Department had not introduced evidence to show what substance Ruiz-Vidal had been convicted of possessing. *Id.* at 1080; *see also Cheuk Fung S-Yong v. Holder*, 600 F.3d 1028, 1034 (9th Cir. 2010) (applying *Ruiz-Vidal* to a conviction under a California statute criminalizing transportation of controlled substances, where the Department failed to establish whether a federally controlled substance was involved). The Seventh Circuit agreed, noting that the "as defined" parenthetical means that if "a state decides to outlaw the distribution of jelly beans, then it would have no effect on one's immigration status to deal jelly beans, because it is not related to a controlled substance listed in the federal CSA." *Desai*, 520 F.3d at 766. This case follows from the holdings in *Ruiz-Vidal* and *S-Yong* and from the reasoning in *Desai*.

14

### 3. The Views of the Department and the BIA in Other Contexts

In addition to being supported by the statute's plain text and persuasive case law, our proposed reading of the statute has been accepted by the BIA. Almost fifty years ago, the BIA terminated removal proceedings against an alien convicted under California law of selling a "narcotic" because although the "California law relate[d] to a narcotic or marihuana violation[,] . . . the record being silent as to the narcotic involved . . . [,] it [was] possible that the conviction involved a substance (such as peyote) which is a narcotic under California law but [wa]s not defined as a narcotic drug under federal law." *Matter of Paulus*, 11 I. & N. Dec. 274, 275 (BIA 1965). Analyzing a predecessor to § 1227(a)(2)(B)(i), the BIA held that "only a conviction for illicit possession of . . . a substance which is defined as a narcotic drug under federal laws can be the basis for deportation proceedings." *Id.* at 276. The BIA here completely ignored *Paulus*.

This reading has also been advocated by the Department itself. In *Ruiz-Vidal*, the Department conceded that it was required to show that the conviction at issue was for possession of a substance "not only listed in the California statute . . . but also contained in . . . the Controlled Substances Act." *Ruiz-Vidal*, 473 F.3d at 1077 n.3. Similarly, the Department has argued to this Court that the parenthetical means that the controlled substance "must be one defined under [the CSA]" in order for the state conviction to satisfy the INA's provisions. Br. for Resp't at 19, *Gul v. Att'y Gen.*, 385 F. App'x 241 (3d Cir. 2009) (No. 09-2675), 2009 WL 8584678, at *19. And, in this very case, while focused on

15

whether paraphernalia statutes "relate to" controlled substances, the Department perhaps unwittingly conceded that Rojas's reading of § 1227(a)(2)(B)(i) is correct, noting, for example, that the parenthetical "is restrictive, [and] modifies the immediate antecedent—the term 'controlled substance,'" Resp't's Br. at 16, and that the law requires that the "statute of conviction 'relate to' *federal* controlled substances," *id.* at 21 (emphasis added). Thus, the Department's resistance to the notion that a federally controlled substance must be involved is, to say the least, perplexing.

Unfazed, the Department urges us not to follow *Ruiz-Vidal* or *Paulus*, relying primarily on *Matter of Espinoza*, 25 I. & N. Dec. 118 (BIA 2009), for the proposition that the holding of those cases should be limited to convictions that involve actual possession of controlled substances. We are not persuaded.

*Espinoza* involved an individual who was subject to, but sought cancellation of, removal, which could be granted upon a showing that the individual had not been convicted of any law "relating to a controlled substance (as defined in section 802 of Title 21)." 8 U.S.C. § 1182(a)(2)(A)(i)(II). Despite his conviction for possessing a marijuana pipe, Espinoza argued that the Department could not "support a finding of inadmissibility unless the paraphernalia was tied to a specific, federally controlled substance." *Espinoza*, 25 I. & N. Dec. at 121. The BIA disagreed, noting both that the conviction was for "possessing a *marijuana* pipe, [so] th[e] argument ha[d] little relevance," and that because it was Espinoza's burden to prove eligibility for adjustment of status, he had the "burden to resolve any issue that might

16

arise in his case by virtue of an asymmetry between the Federal and State . . . schedules." *Id.* These two grounds alone factually and legally distinguish *Espinoza*.

But, to the extent that *Espinoza* intended to limit the Department's obligation to establish a federally controlled substance only to those proceedings based on drug "possessory" offenses (or to the extent that the Department reads *Espinoza* in that way), we disagree with the illogical and atextual interpretation of § 1227(a)(2)(B)(i) that this view compels. We cannot surmise from the text any support for the proposition that the Department's burden of proof changes depending on the type of drug offense involved in the removal proceeding, and, indeed, the statute speaks of "any" law. Moreover, common sense indicates that there should be no difference—we cannot square the text of the law with a world in which a noncitizen may be deported for using "1-(3-trifluoromethylpheny)piperazine" paraphernalia, but not for "possessing" the drug itself. And there is nothing in *Espinoza*, let alone in § 1227(a)(2)(B)(i), to help us logically determine which offenses are "possessory" and which are not. *Espinoza*'s purported limitation of *Ruiz-Vidal* to "possessory" offenses has been undermined by subsequent decisions applying that case to crimes that may or may not require actual possession of drugs. *See, e.g.*, *Mielewczyk v. Holder*, 575 F.3d 992, 995-96 (9th Cir. 2009) (involving the crime of offering to transport drugs); *S-Yong*, 600 F.3d at 1031, 1034 (addressing conviction for transporting *and attempting to transport* controlled substances). The better view is that the parenthetical captures all controlled-substances offenses— any offense involving a particular drug (possessing it,

17

transporting it, using paraphernalia in connection with it, etc.) is removable if the drug is on the federal list.[6]

### 4. The Department's Alternative Reading of the Parenthetical

The Department offers one last alternative, urging that because the statute speaks of a conviction "*relating to* a controlled substance (as defined in section 802 of Title 21)," 8 U.S.C. § 1227(a)(2)(B)(i) (emphasis added), all that is

---

[6] In *Espinoza*, the BIA also rejected the notion that a paraphernalia conviction cannot lead to removal because there is no federal drug-paraphernalia statute. The BIA reasoned that the "as defined" parenthetical "modifies only its immediate antecedent (i.e., 'controlled substance'), not the whole text of the section" and therefore does not impose a requirement that the crime of conviction "relate to" a federally defined crime. *Espinoza*, 25 I. & N. Dec. at 122 (citing *Escobar Barraza v. Mukasey*, 519 F.3d 388, 390 (7th Cir. 2008)). We agree, but are at a loss as to why, given its view that the parenthetical modifies the immediate antecedent term, the BIA does not agree that the controlled substance at issue must be included in the federal schedules. These contradictory lines of reasoning stand in stark contrast to the Ninth and Seventh Circuits' more internally consistent views. Both Circuits recognize, as per *Luu-Le v. INS*, 224 F.3d 911 (9th Cir. 2000), and *Escobar Barraza*, respectively, that paraphernalia statutes "relate to" controlled substances *despite* the existence of the "as defined" parenthetical. At the same time, both recognize, as per *Ruiz-Vidal* and *Desai*, that a conviction must involve a federally controlled drug *because of* the parenthetical.

18

required is that the substance of conviction "relate to" a federally controlled substance, or that a particular State's schedules as a whole "relate to" the CSA. Stated differently, under this view the statute requires establishing only that the State schedules and/or the particular substance involved are sufficiently "close" to the federal substances if the match is not "exact." Resp't's Br. at 20; *see also* Oral Arg. 18:00-18:15 (Oct. 5, 2012) (arguing that the parenthetical only requires that the substances in the State schedules are related "in kind" to those in the federal schedules). This theory presumably disposes of any requirement that the substance of conviction be established when the offense of removal is a drug crime of any state or territory in our Circuit, to the extent we believe that all of a particular jurisdiction's controlled substances, or its schedules as a whole, are "close to" or "relate to" the federal lists. But this reading of § 1227(a)(2)(B)(i) does not comport with plain grammar and leads to results Congress could not have intended.

In essence, the Department's proposal is to re-read the statute to say that removable convictions are those "relating to a controlled substance (relating closely (or in kind) to a substance defined in section 802 of Title 21)." We reject this artificial redraft—we will not construe "relating to" to modify more than one clause and we will not arbitrarily insert into the text the words "close to" or "in kind." *Cf. Lopez*, 549 U.S. at 56 (rejecting a convoluted rewriting of a statute from "a felony punishable under the CSA" to "a felony punishable under the CSA whether or not as a felony").

Moreover, the "close to" test would require immigration agencies and federal courts to become lab experts capable of determining whether any substance

19

criminalized by any given State, such as 1-(3-trifluoromethylphenyl)piperazine, is "close to" or "relates to" any of the hundreds of substances listed in the CSA schedules. Yet we are left to our own devices to ascertain the precise contours of this new "close to" test and whether it turns on chemical, medicinal, physical, or other as-of-yet-unknown properties of drugs.[7]

And the "close to" test would fare no better if applied to the totality of a particular state's schedules—*i.e.*, if the import of the argument were to permit removal without showing that a particular federal drug was involved so long as a state's schedules are, as a whole, sufficiently "close to" the federal schedules, or if a "vast number" or "many" of the state's substances appear in the CSA, *see* Dissenting Op. at 11. It is left unexplained just how many substances a state

---

[7] The dissent dismisses this concern by referring to jelly beans as a "harmless product" and by noting that if a state included tobacco in its definition of controlled substances we would be spared having to make these difficult determinations by a Supremacy or Commerce Clause challenge to the problematic state statute. *See* Dissenting Op. at 15 note 3. But jelly beans and tobacco are merely two poignant examples. States have in actuality criminalized substances at various times that are not as easily dismissed as jelly beans, such as peyote. *See Paulus* 11 I. & N. Dec. at 275. And, like the Department, our dissenting colleagues offer no doctrinal way to distinguish between removing Rojas today, despite the lack of a federally controlled substance, and not removing individuals convicted of possessing non-federally controlled substances tomorrow.

would have to include in its lists that are not in the federal lists before its drug-related offenses would no longer qualify as removable offenses, or whether inclusion of a particularly odd substance (such as jelly beans or large sugary beverages) would suffice. We doubt Congress included a specific reference to the federal schedules only to have removability turn on these unworkable inquiries.[8]

Finally, the Department's reading would result in a patchwork of removability rules dependent on the whims of the legislatures of the fifty states—effectively permitting them to control who may remain in the country via their controlled-substances schedules—not to mention the laws of all foreign nations, which may ban substances that are commonplace in the United States, such as poppy seeds. Although Congress has, on occasion, allowed non-uniformity by tying immigration consequences to state law, here the explicit reference to section 802 of Title 21 shows that Congress has "pegged the immigration statutes to the classifications Congress itself chose. . . . [I]t is just not plausible that Congress meant to authorize a State to overrule

---

[8] This proposed reading of § 1227(a)(2)(B)(i), that "relating to" modifies both "controlled substances" as well as the parenthetical, is also at odds with the Department and the BIA's view that the parenthetical may only modify the immediate antecedent term "controlled substance" but not "relating to." *See supra* note 6. What is good for the goose must be good for the gander—either the clauses of the text modify more than one term or they do not. We reject the Department's view of the shifting transitive powers of the different clauses of § 1227(a)(2)(B)(i).

its judgment about the consequences of . . . offenses to which its immigration law expressly refers." *Lopez*, 549 U.S. at 58-59; *see also Desai*, 520 F.3d at 766 (reasoning that because of the parenthetical, states do not have "free rein to define their criminal laws in a manner that would allow them to . . . determine who is permitted to enter and live in the country"); *cf. Lozano v. City of Hazelton*, __ F.3d __, No. 07-3531, 2013 WL 3855549, at *13 (3d Cir. July 26, 2013) (highlighting "the important national interests that are implicated when local governments attempt to regulate immigration and the concomitant need to leave such regulation in the hands of the federal government").[9]

\* \* \*

For these reasons, we hold that the text of § 1227(a)(2)(B)(i) requires the Department to establish that a foreign national's conviction is both (1) under a law relating to a controlled substance, and (2) involved or implicated a drug defined in section 802 of Title 21. This reading gives effect to all words of the statute and, in our view, most comports with Congress's intent in drafting the law. Because the undisputed documents before the IJ contain no such

---

[9] We agree with the Department that Congress may choose to remove noncitizens who violate the controlled-substances laws of other nations or of the states, even if those jurisdictions choose to criminalize substances different than Congress chose. *See* Oral Arg. at 54:54-55:10 (May 29, 2013). But, if it wishes to do so, Congress must excise the explicit reference to *federally controlled* substances from the statute.

22

showing, the record is defective and the order of removal is invalid.

## B.      Other Interpretative Mechanisms to Construe § 1227(a)(2)(B)(i)

Of course, the rule of the last antecedent, like most canons of construction, is not absolute. *Barnhart*, 540 U.S. at 26. But the Department offers no "other indicia of meaning" from the text to convince us not to follow it. *Id.* Instead, following its focus on "relating to" rather than the "as defined" parenthetical, the Department posits that the answer to the question of whether a drug-paraphernalia statute "relates to" controlled substances is provided by the analytical doctrine known as the "formal categorical approach." *See, e.g.*, Resp't's Br. at 13 (citing *Singh v. Ashcroft*, 383 F.3d 144, 161 (3d Cir. 2004)). The Department contends that the cases applying that doctrine also demonstrate that the "as defined" parenthetical is of little consequence and that a conviction for a non-federally controlled substance may result in removal. Rojas counters that a variant known as the "modified categorical approach" should govern. The parties also spar about whether cases construing the words "relating to" in statutes such as § 1227(a)(2)(B)(i) demonstrate that the parenthetical is irrelevant.

We address these contentions in some detail because they ignore long-standing rules governing when such approaches may be applied and reflect a fundamental misunderstanding of those rules as delineated by the Supreme Court and by our Court.

23

### 1. The Formal Categorical and Modified Categorical Approaches

It is well-established that the categorical approach is a method often used to ascertain whether a prior conviction "fits" the definition of a generic federal predicate offense for purposes of certain immigration or sentencing consequences. The archetypical case is *Taylor v. United States*, where the issue was whether a past state burglary conviction constituted a "burglary" as that term is used in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) ("ACCA"), thus triggering certain sentencing enhancements under the ACCA. 495 U.S. 575, 578-79 (1990). The Supreme Court held that the proper method to answer the question is the categorical approach, which requires a court to determine only whether a conviction under the state statute "necessarily" contained all of the elements of the federal baseline offense, "burglary," by comparing the elements of the state and federal crimes. *Taylor*, 495 U.S. at 601-02. The Court has explained that in performing that comparison, the court must assume that the state law conviction "rested upon [no]thing more than the least of the[] acts" criminalized by state law. *See Johnson v. United States*, 559 U.S. 133, 136-37 (2010). The methodology may also be used to determine whether a past offense "fits" a crime listed in the INA. *See, e.g.*, *Gonzales v. Dueñas-Alvarez*, 549 U.S. 183, 185-87 (2007) (determining whether a past conviction constitutes a "theft offense").

It is also a fundamental rule that courts applying the categorical approach may not delve into the particular facts of a conviction to ascertain if there is a proper fit. *See Taylor*, 495 U.S. at 599-602. The Department urges that this rule disposes of any requirement that a federally controlled

24

substance must be involved in any given conviction for purposes of determining whether that conviction qualifies as a removable offense under § 1227(a)(2)(B)(i).

With this line of reasoning, the Department seems to imply that the categorical approach is the proper rubric of analysis every time we are required to determine whether a conviction fits into the definition of a crime referenced in the INA, or at the very least whether it fits into § 1227(a)(2)(B)(i). This view is deeply flawed. Recently, the Supreme Court explained that the categorical approach applies when one must compare the defendant's or the noncitizen's conviction to a "generic crime" such as "burglary" or "theft." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684-85 (2013) (citing *Nijhawan v. Holder*, 557 U.S. 29, 37 (2009), *aff'g* 523 F.3d 387 (3d Cir. 2008)). We made a similar point almost ten years ago, noting that we had generally applied the element-by-element comparison of the categorical approach in "cases interpreting relatively unitary categorical concepts—like 'forgery' . . . 'burglary' . . . or 'crime of violence.'" *Singh*, 383 F.3d at 161.[10]

But not one of these cases involves a determination of whether a state offense is one "relating to" controlled

---

[10]  In the years since *Singh*, we have consistently applied the categorical approach to see whether a state crime fits into generic, unitary crimes such as "serious drug offenses," *United States v. Tucker*, 703 F.3d 205, 208-09 (3d Cir. 2012); a "drug trafficking crime," *Thomas v. Att'y Gen.*, 625 F.3d 134, 142-44 (3d Cir. 2010); or the "sexual abuse of a minor," *Restrepo v. Att'y Gen.*, 617 F.3d 787, 791 (3d Cir. 2010).

substances (or "relating to" anything else), and, needless to say, none involves an interpretation of the meaning of the "as defined" parenthetical. Thus, it is unsurprising that despite its repeated invocation of the categorical approach to analyze § 1227(a)(2)(B)(i), the Department cannot maintain that the law—which refers broadly to crimes "relating to" controlled substances—lists any discrete offense against which Pennsylvania's paraphernalia statute can be compared. Accordingly, even assuming that the question presented in this case was whether drug-paraphernalia statutes "relat[e] to" controlled substances, the formal categorical approach would not apply.

It is true that the categorical approach permits a slight deviation, known as the modified categorical approach, from the baseline rule that an inquiring court may not look into the particular circumstances of a conviction. When a statute of conviction lists elements in the alternative, some of which fit the federal definition and some of which do not, a court is permitted "to consult a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013).[11]

---

[11] The basic example is when a state defines "burglary" as "breaking and entering" into a vehicle or a dwelling. Because only breaking into a dwelling meets the generic federal definition, the statute of conviction does not categorically fit within the federal crime, but the modified categorical approach may provide an answer. *See, e.g.*, *Taylor*, 495 U.S. at 599-602 (addressing this example). Contrary to the dissent's admonition, our decision in *Evanson v. Attorney General* does not support the proposition that we

26

But it is simply not the case that the modified categorical approach fills the void, or provides a blanket invitation for a court to inquire into the facts underlying a conviction every time the categorical approach does not provide an answer. As the Supreme Court recently explained, the methodology is simply "a mechanism for making th[e] comparison [required by the formal categorical approach] when a[n underlying] statute lists multiple, alternative elements, and so effectively creates 'several different . . . crimes.'" *Id.* at 2285 (last alteration in original) (quoting *Nijhawan*, 557 U.S. at 41).[12]  Indeed, given that the modified categorical approach is merely a "tool for implementing the

"could" apply the categorical approach in this case. *See* Dissenting Op. at 5 (quoting 550 F.3d 284, 290 (3d Cir. 2008)).  In *Evanson*, we applied the categorical (and modified categorical) approach to determine whether a conviction fit another generic, unitary crime, namely, an "aggravated felony" under the INA.  *Evanson*, 550 F.3d at 291-92.

[12] *Descamps* construed a provision of the ACCA, not the INA.  The BIA has stated its view that it may apply the modified categorical approach more broadly in the context of the INA than whatever is mandated by courts construing the ACCA. *See Matter of Lanferman*, 25 I. & N. Dec. 721, 728 (BIA 2012).  But we have rejected any notion that the analysis is different depending on whether the federal baseline statute resides in the INA or the ACCA. *See, e.g.*, *Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 478-80 (3d Cir. 2009).  And the Supreme Court's decisions in *Moncrieffe* and *Descamps*, both analyzing interchangeably INA and ACCA cases, make clear that *Lanferman* has been abrogated.

categorical approach," *id.* at 2284, then, by definition, it has nothing to say in cases—such as this one—where the categorical approach itself is irrelevant. Moreover, Pennsylvania's paraphernalia statute is not phrased in the disjunctive, with some elements satisfying the federal baseline offense and some not—it does not "effectively create[] 'several different crimes'"—so one could not employ the modified categorical approach in any event. *Id.* at 2285.[13]

Thus, the modified categorical approach does not apply in this case. Here, we derive the obligation to establish the existence of a federally controlled substance simply from the text of the law. Our holding is not an invitation to inquire into or relitigate the circumstances underlying every drug conviction—the existence of a federally controlled substance will be established in the same way as the existence of the conviction itself is normally established.[14]

---

[13] Courts are permitted to depart from the categorical approach and "relating to" cases entirely "when the terms of the statute invite inquiry into the facts underlying the conviction at issue." *Singh*, 383 F.3d at 161; *see, e.g.*, *Nijhawan*, 523 F.3d at 392-93 (determining whether a conviction constitutes an offense that "involves fraud or deceit in which the loss . . . exceeds $10,000" (quoting 8 U.S.C. § 1101(a)(43)(M)(i)). There is no contention that the removability conduct at issue in § 1227(a)(2)(B)(i) implicates the rationale of cases like *Nijhawan*.

[14] Were we to insist on fitting the question presented here into the categorical approach, odd results would follow. Even if we could somehow subject Pennsylvania's drug-paraphernalia statute to an element-by-element comparison

28

## 2. Cases Involving "Relating to" Statutes

In addition to cases that apply the formal/modified categorical approach, a parallel but distinct line of cases has developed to address situations in which the relevant federal conduct is presented not as a generic, unitary crime but as a conviction "relating to" other crimes or objects. In these cases, courts do not require a strict element-by-element match between the offense of conviction and the federal baseline, the hallmark of the categorical approach. Instead, the inquiry focuses on the nature of the defendant's conviction, and whether it "stand[s] in relation," "pertain[s]," has "bearing of concern," or "refer[s]" to the object or crime of comparison. *Desai*, 520 F.3d at 764 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)).

We used this form of analysis, for example, in *Denis v. Attorney General* to determine whether a state conviction for tampering with physical evidence constituted a crime

---

against some federal offense, we would be forced to conclude that the drug-paraphernalia statute "sweeps more broadly" than federal drug statutes do, *Descamps*, 133 S. Ct. at 2283, because Pennsylvania criminalizes substances that are not illegal under federal law. Under the categorical approach, then, the "inquiry [would be] over" and no examination of the underlying conviction possible. *Id.* at 2286. Under this improbable application of the categorical approach, many drug offenses under Pennsylvania law could never constitute a removable offense, unless, say, they contain as an element a specific substance that is federally controlled. This plainly incorrect result demonstrates that the categorical approach is a red herring here.

29

"relating to obstruction of justice." 633 F.3d 201, 204 (3d Cir. 2011). We held that it did, not because of any "precise degree of similarity between the elements of Denis's offense and a listed federal crime," but rather based on the "interrelationship" between the state statute and "obstruction of justice." *Id.* at 212; *see also Yong Wong Park v. Att'y Gen.*, 472 F.3d 66, 72 (3d Cir. 2006) (holding that whether a statute of conviction is one "relating to counterfeiting" depends on whether it "seeks to discourage the act of counterfeiting" (citation and internal alteration omitted)).[15]

To be sure, this line of cases would provide the proper rubric of analysis if the question at issue was whether paraphernalia statutes "relate to" controlled substances, which neither party contests. But the Department asks us to

---

[15]     Indeed, many cases deciding whether a statute "relates to" drugs involve statutes of conviction that have no exact federal analog, making impossible the comparison of elements that the categorical approach requires. *See, e.g.*, *Luu-Le*, 224 F.3d at 915 (concluding that a state paraphernalia statute "relates to" controlled substances not on the basis of the categorical approach, but rather because "[t]he statute makes abundantly clear that an object is not drug paraphernalia unless it is in some way linked to drugs"); *Desai*, 520 F.3d at 765 (holding that a state statute criminalizing the sale of drug look-alike substances, a law with no federal-law analog, "relates to" controlled substances not based on a comparison of elements, but because a conviction for a drug look-alike substance "would not even exist as a legal (or linguistic) concept without its connection" to drugs).

extrapolate the "relating to" cases to conclude that so long as a state's controlled-substances schedules "show[] substantial (and obviously intentional) overlap" with the federal schedules, a drug-paraphernalia conviction satisfies the removability provision of § 1227(a)(2)(B)(i) even if the actual substance involved is not evident from the record of conviction. Resp't's 28(j) Letter at 1-2, Aug. 22, 2012. This we decline to do. The proposed use of the "relating to" cases is merely a repackaged version of the argument that "relating to" modifies both "controlled substance" as well as the "as defined" parenthetical, a reading we have already rejected. In other words, the invitation to read "relating to" as modifying the parenthetical is but a thinly-veiled suggestion that we permit those words to excise the parenthetical entirely. *Supra* Parts IV.A.1, 4.

### 3. Our Decision in *Borrome v. Attorney General*

The Department and the dissent also rely extensively on *Borrome v. Attorney General* for the idea that the substance involved in Rojas's offense is irrelevant, but that case did not address the effect of the "as defined" parenthetical and is thus not controlling here. If anything, *Borrome* most clearly demonstrates the differences between the categorical approach and the "relating to" line of cases. In that sense, far from "repudiating" *Borrome*, Dissenting Op. at 15, we embrace it.

Borrome was convicted under the Food, Drug, and Cosmetic Act ("FDCA") of engaging in the unauthorized distribution of certain prescription drugs, and we had to determine whether the FDCA conviction was a "drug trafficking crime," and/or whether the FDCA statute was one

31

"relating to" controlled substances under § 1227(a)(2)(B)(i). 687 F.3d at 152-53. In answering the first question, we applied the categorical approach to determine whether the elements of the FDCA conviction corresponded to the elements of a generic "drug trafficking crime." *See id*. at 155-59. In answering the second question, we relied on the "broad ordinary meaning" of the words "relating to" and focused on the "range of behavior" targeted by the FDCA. *Id*. at 160-62.[16] *Borrome* thus aptly illustrates our application of the first question we must ask under § 1227(a)(2)(B)(i): whether a statute of conviction criminalizes conduct "relating to" controlled substances. *See also Luu-Le*, 224 F.3d at 915 (describing a law that relates to controlled substances as one

---

[16] While in *Borrome* we also referenced the categorical approach when analyzing this second question, we did so in rejecting the IJ's consideration of the particular facts of the petitioner's underlying conviction. *See* 687 F.3d at 159-60 & n.7. But in no way does *Borrome* support the Department's contention that the categorical approach is the proper rubric of analysis in all of these cases. Indeed, while we also made reference to the categorical approach in *Denis*, in that case we in reality engaged in traditional "relating to" analysis, as indicated earlier at Part IV.B.2. *See Denis*, 633 F.3d at 211-12 (explaining that "[t]o give effect to Congress's choice of language, a categorical matching of the elements of the offense of conviction with the elements of a federal law cannot be the sole test for determining whether a crime of conviction 'relates to' a generic federal offense," and concluding that an offense for tampering with evidence "bears a close resemblance to . . . obstruction of justice" and thus constituted a crime "relating to obstruction of justice").

32

that "is plainly intended to criminalize behavior involving the production or use of drugs"). But, because we concluded that the FDCA was not a law "relating to" a controlled substance, we stated that the substance underlying the conviction in *Borrome* was irrelevant. In other words, we did not have occasion in *Borrome* to address the meaning of the "as defined" parenthetical.[17]

Moreover, in concluding that the FDCA conviction did not relate to the CSA, we noted in *Borrome* that the FDCA prohibits "countless activities that are completely unconnected to controlled substances" and also that the connection between the substances listed in the CSA and those at issue in the FDCA was "not at all evident from the face of [the statute] and only emerges after a journey through other laws." 687 F.3d at 162. The reference to the two schedules showed simply that the one common link between the FDCA and the CSA, the overlap in some of the substances at issue under each, was itself so attenuated that it did not warrant finding that FDCA offenses "relate to" CSA offenses. *Id.* at 161-63. Thus, contrary to the Department and the dissent's admonitions, *see* Dissenting Op. at 6-11, 15-16, *Borrome* does not stand for the idea that the level of correspondence between the federal schedules and a state's schedules with respect to its drug laws is outcome-determinative.

---

[17] Similarly, despite the Department's extensive reliance on *Luu-Le*, *Luu-Le* only addressed whether a drug paraphernalia statute was a law "relating to" a controlled substance, and did not reach the "as defined" parenthetical. 224 F.3d at 915.

\* \* \*

The bottom line with respect to the foregoing analysis is that not one of the categorical approach cases addresses the effect of the "as defined" parenthetical of § 1227(a)(2)(B)(i) on the Department's burden of proof. Instead, they dictate only how exact the match between an underlying statute of conviction and a federal baseline offense has to be in order to satisfy federal law. The same is true of a common theme that unites the categorical approach and the "relating to" cases—the rule that the existence of a conviction is established not by reference to the underlying facts of a case but by reference to the underlying statute. Although the Department and the dissent seek to import that rule into this case, the rule merely explains *how* the Department must meet its burden, not *what* that burden is. There is simply no doctrinal basis to transform any of these rules into a mechanism to lessen the Department's burden altogether or to use them to read a clause entirely out of the removability statute. And the existence of these diverse rules, applicable depending on how the INA phrases the baseline offense, highlights an important point: the text of the law is always paramount. The wording of the baseline crime always dictates the proper method of analysis. We ought not turn that principle on its head by letting the different methodologies contort the words of the statute.[18]

---

[18] We decline to follow *Mellouli v. Holder*, 719 F.3d 995 (8th Cir. 2013), on which the Department relies, because it wrongly assumed that the "categorical approach" is the proper focus of the "relating to" inquiry. *Id.* at 1000-01. Moreover, although the *Mellouli* petitioner conceded that

34

## C. Rojas's Remedy

We now address the proper remedy—whether to reverse the BIA's ruling or to remand the case to the BIA so that it may determine in the first instance whether to further remand to the IJ to give the Department a proverbial second bite at the apple.

The Department asks that, if we determine that establishing the involvement of a federally controlled drug was required, we remand the case so that it may make the adequate showing under the "modified categorical approach." *See* Resp't's Br. at 13 n.11. But we have already concluded that application of the categorical approach would, rather than counseling a remand, mean that "the inquiry is over." *Descamps*, 133 S. Ct. at 2286; *see also supra* note 14. Nevertheless, because the Department purports to be able to make the required showing in the same way it established the existence of the criminal conviction in the first place, we will remand the matter to the BIA. Our remand is solely so that the BIA may determine whether it is appropriate to further remand the case to the IJ, to permit the Department to make the required showing before that agency.

---

paraphernalia statutes generally "relat[e] to" controlled substances, *id.* at 999, the Court nevertheless resorted to cases dealing precisely with that question to solve the additional issue of whether the Department must establish that a federally controlled substance was at issue, without addressing cases like *Ruiz-Vidal* that actually deal with the Department's burden, *see, e.g.*, *id.* at 997, 1000 (relying on, among others, *Luu-Le* and *Escobar Barraza*).

To guide the BIA's decision, we note the following. *First*, that normally the proper way to establish the fact of a conviction is to rely on the so-called *Taylor-Shepard* documents, and we see no reason why the existence of a federally controlled substance cannot be similarly established. *See Shepard v. United States*, 544 U.S. 13, 23-24, 26 (2005). "[I]n the case of a guilty plea," these documents consist of "the plea agreement, plea colloquy, or some comparable judicial record of the factual basis for the plea." *Moncrieffe*, 133 S. Ct. at 1684 (internal quotation marks omitted). But we have also recognized that a police criminal complaint may establish the underlying fact of a conviction to the extent it serves as a charging instrument with certain indicia of reliability. *See, e.g.*, *Garcia v. Att'y Gen.*, 462 F.3d 287, 292 (3d Cir. 2006) (so holding when the complaint bore the "imprimatur" of the district attorney). In that regard, however, we reiterate that the reliability of the police criminal complaint here is already in grave doubt. For one, it states that it was approved by a Commonwealth attorney "via phone" in a space where the document appears to require a signature from an approving attorney. Moreover, it was prepared in October of 2009, seven months after Rojas's arrest. Finally, the affidavit of probable cause attached to the complaint inexplicably narrates the arrest of a woman in June of 2009 for drunk driving.

*Second*, the police criminal complaint here implicates the Supreme Court's recent admonitions to be wary of attempts to relitigate prior convictions based on documents "the meaning of [which] will often be uncertain," or when "the statements of fact in them may be downright wrong." *Descamps*, 133 S. Ct. at 2289. Indeed, charging documents

generally implicate the Supreme Court's concern that "during plea hearings, the defendant may not wish to irk the prosecutor or court by squabbling about superfluous factual allegations" in a document that does not constitute the basis of a defendant's actual plea. *Id*. We trust that the BIA will consider these points in deciding whether to remand the case to the IJ.

## V. **CONCLUSION**

The outcome of this case turns on the plain text of § 1227(a)(2)(B)(i), and, in particular, on the language of the parenthetical: "as defined in section 802 of Title 21." We conclude that this clause means that the controlled-substances conviction that is the basis of removal must involve or relate to a substance "defined in" federal law. Most drug convictions will qualify as removable offenses under this reading. Indeed, the guilty plea or jury instructions in a Pennsylvania drug-paraphernalia conviction will normally list the drug at issue (given that a violation of the statute requires the actual or intended presence of a specific drug), and most of Pennsylvania's drugs are on the federal list. It simply will be a matter of checking if the substance at issue is contained in that list. Thus, "to the extent that our rejection of the Government's broad understanding of the scope of [this statute] may have any practical effect on policing our Nation's borders, it is a limited one." *Carachuri-Rosendo*, 130 S. Ct. at 2589. And, to be sure, Congress may change the trigger of removability by altering—or deleting—the contents of the parenthetical. Today, we simply give effect to the statute's most natural reading.

We will grant Rojas's petition for review and remand the case to the BIA for further proceedings in accordance with this opinion.

GREENBERG, Circuit Judge, dissenting

As the majority has indicated, this matter is before this Court on Ramiro Enrique Rojas's petition for review of a decision and order of the BIA dated January 17, 2012, dismissing his appeal from a decision of an immigration judge ("IJ") dated September 22, 2011. The case arises from the circumstance that a Pennsylvania state court convicted Rojas, a citizen of the Dominican Republic and lawful permanent resident ("LPR") of the United States, on the basis of his pleas of guilty to state charges of use/possession of drug paraphernalia and possession of marijuana. Thereafter the Department of Homeland Security ("Department") sought to remove Rojas pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) by reason of those convictions. Section 1227(a)(2)(B)(i) provides that:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

Although the Department later conceded that Rojas's conviction for possession of marijuana did not render him removable because it did not pass the 30-gram statutory removable threshold for marijuana, it continued to seek to remove him on the basis of his separate conviction involving drug paraphernalia. Rojas filed a notice to terminate the

1

removal proceedings pending against him before an IJ arguing that his conviction for use/possession of drug paraphernalia under Pennsylvania law did not "relate[] to a controlled substance" within the meaning of section 1227(a)(2)(B)(i) because the Pennsylvania definition of a controlled substance "is more expansive" than that found in 21 U.S.C. § 802 (the "Controlled Substances Act" or "CSA") and thus his conviction did not necessarily involve a controlled substance as defined in the CSA. App. at 128 (internal quotation marks omitted). In this regard, Rojas pointed out that the state court record of his conviction did not specify the controlled substance involved in his offense. The IJ denied Rojas's motion and sustained the controlled substance charge of removability against Rojas and issued a removal order. The BIA dismissed Rojas's appeal from the IJ's decision and Rojas then filed a petition for review with this Court. After a panel of this Court heard oral argument but before it issued its opinion the Court on its own initiative ordered that the matter be heard by the Court en banc. Following argument before the en banc Court, the majority now is granting the petition but I am dissenting as I would deny the petition for review.[1]

---

[1] The majority indicates that it does not matter whether it reviews the BIA's legal conclusions de novo or reviews them under the principles that the Supreme Court set forth in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778 (1984), and I agree that the scope of review that the Court uses in this case does not matter for under any approach this Court should deny the petition for review. Unlike the majority I make scant reference to opinions

Ultimately this case presents a single straightforward question: was Rojas's conviction based on his guilty plea under 35 Pa. Stat. Ann. § 780-113(a)(32) (West 2003) for use/possession of drug paraphernalia a "violation of . . . any law of a State . . . relating to a controlled substance (as defined by section 802 of Title 21)" under section 1227(a)(2)(B)(i). Section 780-113(a)(32) prohibits:

> The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

Pennsylvania courts have held that to sustain a conviction for possession of drug paraphernalia under 35 Pa. Stat. Ann. § 780-113(a)(32), "the Commonwealth must establish that the items possessed, were used or intended to be used with a controlled substance." Commonwealth v. Torres, 617 A.2d 812, 815 (Pa. Super. Ct. 1992). Pennsylvania law, in part tracking section 780-113(a)(32), broadly provides that "drug paraphernalia" means:

---

from other jurisdictions because the meaning of section 1227(a)(2)(B)(i) is clear on its face and in reaching my result I simply rely on the text of the law as written.

3

[A]ll equipment, products and materials of any kind which are used, intended for use or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 Pa. Stat. Ann. § 780-102(b) (West 2003). A "controlled substance" in Pennsylvania is "a drug, substance, or immediate precursor included in Schedules I through V of [the Pennsylvania Controlled Substance, Drug, Device, and Cosmetic Act]." Id. Under the CSA in 21 U.S.C. § 802(6) "controlled substance" means:

a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter. The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1986.

Rojas contends that his conviction does not fall within section 1227(a)(2)(B)(i) because the Department did not establish that the CSA includes the unidentified substance underlying his state-law paraphernalia conviction as a controlled substance. Specifically, he argues that "in order to prove deportability under [section 1227(a)(2)(B)(i), the Department]

4

must show that Mr. Rojas's criminal conviction was for possession of a substance that is not only listed under the Pennsylvania controlled substance schedules, but also contained in the federal schedules of the Controlled Substance Act." Petitioner's br. at 14. Rojas contends that inasmuch as the record of his conviction does not identify the substance involved in his offense and the Pennsylvania schedules list more substances than their federal counterparts, his conviction is not necessarily one "relating to a controlled substance (as defined in section 802 of Title 21)."

To determine whether Rojas's drug paraphernalia possession conviction renders him removable pursuant to section 1227(a)(2)(B)(i), the Court could "apply a formal categorical approach."[2] Evanson v. Att'y Gen., 550 F.3d 284, 290 (3d Cir. 2008) (citation and internal quotation marks

---

[2] Such an application would be consistent with the Supreme Court's recent holding in Moncrieffe v. Holder, 569 U.S. __, 133 S.Ct. 1678 (2013), in which the Court applied the formal categorical approach to determine if a conviction for a Georgia state offense constituted "illicit trafficking in a controlled substance," 8 U.S.C. § 1101(a)(43)(B), and therefore was an "aggravated felony" under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq. As the Court explained, "[w]hen the Government alleges that a state conviction qualifies as an 'aggravated felony' under the INA, [it] generally employ[s] a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA." 133 S.Ct. at 1684 (citations omitted).

omitted) (discussing whether an offense of conviction amounts to an aggravated felony under the Immigration and Nationality Act). Under this approach, which the BIA applied, a court "must look only to the statutory definitions of the prior offenses, and may not consider other evidence concerning the defendant's . . . crimes, including . . . the particular facts underlying a conviction." Borrome v. Att'y Gen., 687 F.3d 150, 155 (3d Cir. 2012) (citations and alterations omitted). But Rojas contends that the IJ and BIA should have used a modified categorical approach in which "a limited number of judicially noticeable documents [should be considered] to determine whether the alien was in fact convicted of a removable offense." Petitioner's br. at 15. The majority, however, does not reach its result by applying either a formal or modified categorical approach. Rather, it explains that it reaches its result "simply from the text of the law." Majority typescript at 24. But no matter what approach is taken it should be evident that Rojas's argument is wrong and that the Court should deny his petition for review.

Though I limit my discussion of cases from other courts, our opinion in Borrome requires discussion for, as I will explain, the majority is repudiating a critical portion of that case. In Borrome, in dealing with the relationship between the Federal Food, Drug, and Cosmetics Act ("FDCA") and the CSA this Court observed that "the BIA has interpreted ['relating to'] expansively: [t]he 'relating to' concept has a broad ordinary meaning, namely, to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." Borrome, 687 F.3d at 160 (quoting Matter of Espinoza, 25 I. & N. Dec. 118, 120 (BIA 2009)) (some internal quotation marks omitted). Moreover, as is particularly

6

significant here the Court in <u>Borrome</u> also pointed out that:

> Unless an alien claims that the basis of his alleged removability is 'a single offense involving possession for one's own use of 30 grams or less of marijuana,' § 1227(a)(2)(B)(i) does not ask courts to scour an alien's indictment and sniff out a controlled substance, or otherwise to look to the underlying facts of an alien's conviction, to determine whether the alien is removable.  Such an inquiry would be irrelevant.  <u>The important statutory phrase is 'relating to a controlled substance,' and it modifies 'law or regulation.'</u> <u>See</u> <u>Mielewczyk v. Holder</u>, 575 F.3d 992, 994 (9th Cir. 2009); <u>see also</u> <u>Mizrahi v. Gonzales</u>, 492 F.3d 156, 159 (2d Cir. 2007) (noting that 8 U.S.C. § 1182(a)(2)(A)(i)(II), which is the inadmissibility counterpart to 8 U.S.C. § 1227(a)(2)(B)(i), 'applies only if the "law or regulation" violated relates to controlled substances').  An analysis of the laws or regulations of conviction is required.  <u>Therefore, our task is to determine whether the FDCA's wholesale distribution provisions, 21 U.S.C. §§ 331(t) and 353(e)(2)(A), are laws 'relating to a controlled substance' not (as the IJ seems to have believed) whether the facts of Borrome's conviction 'relat[e] to a controlled substance.'</u>

<u>Id.</u> at 159 (emphasis added).  The importance of the foregoing statement in <u>Borrome</u> is obvious and if I could I would doubly

7

emphasize the last sentence.

The Pennsylvania drug paraphernalia law stands in the same relationship to section 1227(a)(2)(B)(i) as the FDCA provisions the Court considered in Borrome as both are "law[s] . . . of a State [or] the United States." Thus, the question before the Court now is whether the Pennsylvania controlled substances paraphernalia possession law under which Rojas was convicted was a statute relating to a controlled substance as defined in 21 U.S.C. § 802 just as in Borrome the question was whether the FDCA sections violated were laws relating to controlled substances within section 1227(a)(2)(B)(i). On this point notwithstanding the majority's conclusion there should be no doubt.

In Borrome, an IJ found an alien removable pursuant to 8 U.S.C. §§ 1101(a)(43)(B) and 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony in violation of the FDCA as set forth in 21 U.S.C. §§ 331(t) and 353(e). 687 F.3d at 153. The IJ also found the alien removable under section 1227(a)(2)(B)(i) as an alien convicted of violating a law "relating to a controlled substance." Id. The alien appealed but the BIA summarily affirmed and the alien then filed a petition for review with this Court. Id. at 154. This Court granted the petition and vacated the order of removal, concluding that the FDCA provisions were not laws "relating to a controlled substance" as defined by 21 U.S.C. § 802 under 8 U.S.C. §§ 1101(a)(43)(B), 1227(a)(2)(A)(iii) and 1227(a)(2)(B)(i). 687 F.3d at 162-63. Nevertheless, the Court noted that the BIA and several other courts of appeals "have held that a law prohibiting the possession or use of drug paraphernalia is a law 'relating to a

8

controlled substance,'" because "[p]araphernalia statutes relate to controlled substances, even though they prohibit the possession of instruments rather than controlled substances themselves, because the possession of an item intentionally used for manufacturing, using, testing, or enhancing the effect of a controlled substance necessarily pertains to a controlled substance." Id. at 160 (some internal quotation marks omitted).

In Borrome, however, the Court recognized that although the definition of "controlled substance" under a state law need "not map perfectly with the definition of 'controlled substance' under the CSA," id. (some internal quotation marks omitted), "the phrase 'relating to . . .' must have limits, lest it be bent beyond all logical meaning." Id. at 162. Accordingly, in Borrome the Court held that "the phrase 'any law . . . relating to a controlled substance' reaches those laws that do not require the actual involvement of a controlled substance for a conviction," but stated that "we are equally convinced that a law does not automatically come within the ambit of that phrase simply because a conviction may involve a controlled substance." Id. at 161 (emphasis in original). The Court observed that some prescription drugs subject to the proscriptions of the FDCA in 21 U.S.C. §§ 331(t) and 353(e) were also "controlled substances" as defined under the CSA including the powerful opiate Oxycontin, but some, such as Viagra, were not. The Court thus held that "[t]he coincidental possibility that a controlled substance might be involved with the violation of a law or regulation is not enough to make that law or regulation one 'relating to a controlled substance' for deportability purposes under § 1227(a)(2)(B)(i)." 687 F.3d at 161-62.

9

In reaching its conclusion in Borrome with respect to the limits of the CSA, the Court observed that the connection under the FDCA between 21 U.S.C. §§ 331(t) and 353(e) and controlled substance offenses was attenuated, and that although there is a "nexus" between prescription drugs and controlled substances, "[t]o see the connection . . . [,] we must rummage through [a] 400-plus page 'Prescription Drug Product List' . . . and then hunt for a match in the roughly 100 pages of schedules of controlled substances in the Code of Federal Regulations." Id. at 162. The Court also recognized that those statutes "criminalize a substantial swath of conduct with no nexus to controlled substances as defined in 21 U.S.C. § 802," id., because those "statutes are blind to whether a particular prosecution involves highly addictive prescription painkillers, or relatively benign prescription shampoos, topical creams, or eye drops." Id. Thus, the Court was of the view that classifying 21 U.S.C. §§ 331(t) and 353(e) as laws "'relating to a controlled substance' would stretch too far the bounds of the phrase 'relating to.'" Id.

Here, however, there is a close nexus between the state crime of use/possession of drug paraphernalia to which Rojas pleaded guilty and the CSA under 21 U.S.C. § 802 because only an infinitesimal portion of the drugs listed as controlled substances in the Pennsylvania schedules do not appear on the federal schedules. As the majority points out the parties agree that at the time of Rojas's conviction the Pennsylvania controlled substances schedules contained only three narcotics not listed on the federal controlled substances schedules. Majority typescript at 5. Indeed, Rojas does not even contend that the drug paraphernalia in his case related to one of this

10

minute fraction.  In this vein, the Department argues that Rojas's state conviction categorically falls within section 1227(a)(2)(B)(i) because "Pennsylvania's drug schedules . . . closely mirror the federal ones," and "the offense of drug paraphernalia is closely linked to the offense of possessing drugs."  Respondent's br. at 19-20.

Certainly the Department's assertion with respect to the overlap of controlled substances is correct though the Pennsylvania and federal lists of controlled substances are not precisely identical.  In considering this deviation in the schedules the majority misses the forest for the trees in performing a strict one-to-one comparison between the federal and state lists.  Congress, moreover, provided for slight variation by referencing "any law or regulation of a State" and then utilizing the broad language of "relating to" concerning controlled substances as defined in federal law.  See, e.g., Desai v. Mukasey, 520 F.3d 762, 766 (7th Cir. 2008) ("If Congress wanted a one-to-one correspondence between the state laws and the federal CSA, it would have used a word like 'involving' instead of 'relating to,' . . . .").

In any event, even though there were a minute number of substances that at the time of Rojas's paraphernalia conviction were controlled substances under Pennsylvania law but not under the CSA, section 1227(a)(2)(B)(i) is applicable here.  After all, it is clear that, although, as Rojas contends, the Pennsylvania definition of controlled substances goes beyond the federal definition of controlled substances, the Pennsylvania drug paraphernalia law as set forth in 35 Pa. Stat. Ann. § 780-113(a)(32) under which Rojas was convicted applies to

11

paraphernalia used in connection to a vast number of controlled substances as defined in 21 U.S.C. § 802. Therefore, Rojas pleaded guilty to a violation of a state law that related to many controlled substances as defined in 21 U.S.C. § 802.

The interpretation of section 1227(a)(2)(B)(i) that I advance is consistent with the Court's reading of that section in Borrome and is supported by the "rule of the last antecedent." That rule, an accepted principle of statutory interpretation, teaches that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." Barnhart v. Thomas, 540 U.S. 20, 26, 124 S.Ct. 376, 380 (2003) (citation omitted); see also Disabled in Action of Pa. v. SEPTA, 539 F.3d 199, 210 n.13 (3d Cir. 2008). Although the rule is not absolute and can be negated "by other indicia of meaning," the Supreme Court has said that interpreting statutes in conformity with the rule is "'quite sensible as a matter of grammar.'" Barnhart, 540 U.S. at 26, 124 S.Ct. at 380 (quoting Nobelman v. Am. Sav. Bank, 508 U.S. 324, 330, 113 S.Ct. 2106, 2111 (1993)). Moreover, in Barnhart the Supreme Court reversed this Court for failing to adhere to this common rule of English grammar. See id., 124 S.Ct. at 380-81.

Though the majority believes that the rule of the last antecedent supports its result, in fact the majority is making the same grammatical error that this Court made in Barnhart. As stated above, the statutory text in section 1227(a)(2)(B)(i) at issue reads:

Any alien who at any time after admission has been convicted of a violation of (or a conspiracy

12

or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

The majority seems to believe that the rule of the last antecedent supports its result because it indicates that the parenthetical, "as defined in section 802 of Title 21," "affects only its immediate antecedent term, 'a controlled substance.'" Majority typescript at 10. But the problem with the majority's analysis is that it is considering the last antecedent to "as defined in section 802 of Title 21." But the fact is that the rule of the last antecedent comes into play in this case when a court considers the last antecedent to the phrase "relating to a controlled substance," and that antecedent certainly is "any law or regulation of a State, the United States, or a foreign country" and not "convicted of a violation." After all, it simply cannot be reasonably denied that the statute's plain language makes clear that the phrase "relating to a controlled substance" does not follow the words "convicted of a violation." Therefore, regardless of the facts underlying a conviction, if an alien is convicted of a violation of a state law relating to a controlled substance, as surely was the case here given Rojas's guilty plea for use/possession of drug paraphernalia under 35 Pa. Stat. Ann. § 780-113(a)(32), he is removable. Nothing could be clearer.

In reaching its result the majority is rejecting the plain meaning of section 1227(a)(2)(B)(i) for it says that "the Department must show that the conviction for which it seeks to

13

deport a foreign national involved or related to a federally-controlled substance." Majority typescript at 3. But section 1227(a)(2)(B)(i) says no such thing for what it says is that an alien to be deported must be convicted of a violation of a law "relating to a controlled substance (as defined in section 802 of Title 21)." It is the law that the alien violated not the violation of which the alien was convicted that must be related "to a controlled substance (as defined in section 802 of Title 21)." It is obvious that regardless of the substance involved in Rojas's case he was convicted of violating a law relating to a controlled substance as defined in section 802 of Title 21 and therefore the Court should deny his petition for review.

I think that it is significant that in its opinion the majority indicates that for an individual to be deported, the Department must establish "that the individual it seeks to remove (1) is an alien (2) who at anytime after entering the country violated or attempted to violate a law relating to a controlled substance and (3) that the controlled substance is defined as such by federal law." Majority typescript at 11. In this regard, it is clear that the Department did establish that Rojas is an alien who violated a law relating to a controlled substance as that term is defined by federal law even if the particular drug involved in his case did not come within the definition of section 802 of Title 21. In effect the majority is rewriting section 1227(a)(2)(B)(i) by adding the emphasized language so that the section reads as follows:

> An alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a

14

State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana is deportable, provided that the conviction was for an offense that involved a controlled substance as defined in 21 U.S.C. § 802.

My conclusion with respect to what the majority is actually doing should surprise no one for Borrome explains, "relating to a controlled substance . . . modifies 'law or regulation,'" not the facts of the offense. 687 F.3d at 159. Though the majority indicates that it is "embrac[ing]" Borrome, majority typescript at 27, in fact, it is repudiating that case's critical statement that relates "controlled substance" to "law or regulation" and therefore the majority is making the same mistake that the immigration judge made in Borrome.

Finally, it is important to point out that in this case we are not concerned with a state law the violation of which might involve a controlled substance in an attenuated or happenstance way. Quite to the contrary, the Pennsylvania law under which Rojas was convicted was aimed at the regulation of controlled substances almost all of which were controlled substances under both Pennsylvania and federal law. Thus, Rojas's state case did

not involve a statute impacting on controlled substances as a matter of chance as would be, for example, a general shoplifting statute which precluded the shoplifting of any merchandise and without specific reference included controlled

15

substances.[3]  If Rojas's prosecution and conviction had been under such a statute it would be unreasonable to say that he had been convicted under a law relating to a controlled substance as defined in 21 U.S.C. § 802.  See Borrome, 687 F.3d at 162.

For the reasons I have set forth I dissent from the majority opinion as it is clear that the Court should deny Rojas's petition for review and vacate the stay of removal that it granted on January 31, 2012.  Judge Fisher joins in this opinion.

---

[3] I recognize that in theory there could be a problem if a state nonsensically added a harmless product such as jelly beans to its controlled substances schedules but I decline to reach my result on that chance as Rojas does not contend that any such product is involved here and I see no reason to believe that a state would act in such an irrational way or if it did the addition would survive judicial review.  I further realize that, as the majority points out, a state in what might not be regarded as a nonsensical act could "include tobacco in its [controlled substances] schedules." Majority typescript at 11.  Nevertheless, the remote possibility that there could be such an inclusion in a state controlled substances schedule should not control the result in this case for we can be certain that if a state attempts to outlaw the possession or use of tobacco the tobacco industry will not be slow to file a district court action challenging the state law or regulation under, inter alia, the Supremacy and Commerce Clauses.  In any event, long experience has taught me not to decide cases to avoid a fictional parade of horribles.